THOMAS F. KOEGEL (SBN 125852)
tkoegel@crowell.com
NATHANIEL P. BUALAT (SBN 226917)
nbualat@crowell.com
CROWELL & MORING LLP
275 Battery Street, 23rd Floor
San Francisco, California 94111
Telephone: (415) 986-2800
Facsimile: (415) 986-2827

CHRISTOPHER FLYNN (*pro hac vice* pending)
cflynn@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
Telephone: (202) 624-2500
Facsimile: (202) 628-5116

JENNIFER S. ROMANO (SBN 195953)
jromano@crowell.com
MICHAEL Y. KAO (SBN 235263)
mkao@crowell.com
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, California 90071
Telephone: (213) 622-4750
Facsimile: (213) 622-2690

Attorneys for Defendant
UNITED BEHAVIORAL HEALTH

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| GARY ALEXANDER, on his own behalf and on behalf of his beneficiary son, JORDAN ALEXANDER, and all others similarly situated, CORINNA KLEIN, on behalf of herself and all others similarly situated, DAVID HAFFNER, on behalf of the himself and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED BEHAVIORAL HEALTH (operating as OPTUMHEALTH BEHAVIORAL SOLUTIONS), <br><br> Defendant. | Case No. 3:14-CV-05337-JCS <br><br> **DEFENDANT UNITED BEHAVIORAL HEALTH'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date: March 20, 2015 <br> Time: 9:30 a.m. <br> Judge: Hon. Joseph Spero <br> Courtroom: G <br><br> Action Filed: December 4, 2014 |

Crowell
& Moring LLP
Attorneys At Law

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................. 1

ISSUES TO BE DECIDED (L.R. 7-4(A)(3)) ............................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 2

STATEMENT OF FACTS ........................................................................................................... 4

        A.    Plaintiffs Allege That They Are Participants or Beneficiaries of ERISA Plans That Provide Coverage for Mental Health and Substance Abuse Treatment .............................................................................. 4

        B.    Plaintiffs Claim They Needed Mental Health Treatment in an Outpatient Facility or Represent a Family Member Who Needed Such Treatment ........................................................................................... 7

        C.    Plaintiffs Assert Four Causes of Action Against UBH in Their Complaint .................................................................................................. 8

ARGUMENT ................................................................................................................................ 9

    I.    Plaintiffs Fail to State a Claim in Count I Because UBH's "Drafting and Promulgating" of Level of Care and Coverage Determination Guidelines Are Not Fiduciary Acts Subject to Judicial Review Under ERISA ..................... 10

        A.    Plan Design Concerns a Non-Fiduciary "Settlor Function," Which Does Not Give Rise to a Claim for Breach of Fiduciary Duty ................. 10

        B.    UBH's Creation and Promulgation of Level of Care and Coverage Guidelines Is a Settlor Function That Is Not Subject to Any Fiduciary Obligations ................................................................................ 12

    II.    Plaintiffs Fail to State a Benefits Claim Because They Do Not Allege That the Mental Health Benefits They Seek Are Covered Under the Terms of Their ERISA Plans ........................................................................................... 15

    III.    Plaintiffs Fail to State a Claim for Equitable Relief in Counts III and IV Because Those Counts Are Derivative of Counts I And II, and Plaintiffs Fail to Plead Facts Supporting an ERISA Violation ............................................. 16

CONCLUSION ........................................................................................................................... 17

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-i-

DEFENDANT'S MOT. TO DISMISS; MEMO. OF P&A
IN SUPPORT THEREOF; CASE NO. 3:14-CV-02346-JCS

LAACTIVE-601716448.8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...........................................................................................................9, 10

*Averheart v. U.S. WEST Management Pension Plan,*
46 F.3d 1480 (10th Cir. 1994)..........................................................................................11, 14

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)...........................................................................................................9, 10

*Collins v. Pension & Ins. Comm. of So. Cal. Rock Prods. & Ready Mixed Concrete Ass'ns,*
144 F.3d 1279 (9th Cir. 1998).................................................................................................16

*Coronado v. Chevy Chase Bank, FSB,*
554 F. App'x. 549 (9th Cir. 2014) ...........................................................................................9

*Curtiss-Wright Corp. v. Schoonejongen,*
514 U.S. 73 (1995)..................................................................................................................11

*Daniel F. v. Blue Shield of California,*
2011 WL 830623 (N.D. Cal. Mar. 3, 2011) ...........................................................................11

*Daniels-Hall v. Nat'l Educ. Ass'n,*
629 F.3d 992 (9th Cir. 2010)....................................................................................................5

*Dzinglski v. Weirton Steel Corp.,*
875 F.2d 1075 (4th Cir. 1989).............................................................................................4, 16

*Eden Surgical Center v. Budco Group, Inc.,*
2010 WL 2180360 (C.D. Cal. 2010)......................................................................................12

*Fifth Third Bancorp v. Dudenhoeffer,*
134 S. Ct. 2459 (2014).........................................................................................................4, 10

*Gilliam v. Nevada Power Co.,*
488 F.3d 1189 (9th Cir. 2007)................................................................................................15

*Henglein v. Colt Indus. Operating Corp.,*
260 F.3d 201 (3d Cir. 2001)....................................................................................................14

*Hozier v. Midwest Fasteners, Inc.,*
908 F.2d 1155 (3d Cir. 1990)..................................................................................................12

LAACTIVE-601716448.8

*Hughes Aircraft Co. v. Jacobson*,
   525 U.S. 432 (1999)..................................................................................11, 14

*Jones v. Kodak Medical Assistance Plan*,
   169 F.3d 1287 (10th Cir. 1999)..................................................3, 11, 12, 13

*Lockheed Corp. v. Spink*,
   517 U.S. 882 (1996)..................................................................................11, 14

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008)..................................................................9, 16

*Pegram v. Herdrich*,
   530 U.S. 211 (2000)..................................................................................10, 11

*Teen Help, Inc. v. Operating Eng'rs Health & Welfare Trust Fund*,
   1999 WL 1069756 (N.D. Cal. Aug. 24, 1999)................................................13

*US Airways, Inc. v. McCutchen*,
   133 S. Ct. 1537 (2013)......................................................................................15

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996)......................................................................................4, 16

*Warren v. Fox Family Worldwide, Inc.*,
   328 F.3d 1136 (9th Cir. 2003)............................................................................16

*Wright v. Oregon Metallurgical Corp.*,
   360 F.3d 1090 (9th Cir. 2004)........................................................................3, 14

*Zadrozny v. Bank of New York Mellon*,
   720 F.3d 1163 (9th Cir. 2013)..................................................................8, 9, 15

**Statutes**

29 U.S.C. § 1002(21)(A)......................................................................................10

29 U.S.C. § 1024(b)(4)........................................................................................13

29 U.S.C. § 1132(a)(1)(B)......................................................................................8

29 U.S.C. § 1132(a)(3)......................................................................................4, 16

29 U.S.C. § 1132(a)(3)(A)..................................................................................9, 16

29 U.S.C. § 1132(a)(3)(B)..................................................................................9, 16

**Other Authorities**

Fed. Rule of Civ. Proc. § 12(b)(6) .....................................................................9, 14

LAACTIVE-601716448.8

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 20, 2015 at 9:30 a.m., or as soon thereafter as this matter may be heard, in Courtroom G, 15th floor, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Joseph Spero, Defendant United Behavioral Health ("UBH") will and hereby does move to dismiss Plaintiffs Gary Alexander, Corinna Klein, and David Haffner's (collectively, "Plaintiffs") Class Action Complaint ("Complaint").

Defendant moves the Court for an order dismissing Plaintiffs' Complaint in its entirety and with prejudice.  Defendant's Motion to Dismiss is made pursuant to Federal Rule of Civil Procedure 12(b)(6), and is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the accompanying Declarations of Jane E. Stalinski and Maryann Britto, all pleadings on file in this matter, and other matters as may be presented to the Court.

## ISSUES TO BE DECIDED (L.R. 7-4(A)(3))

1.     Whether Count I in Plaintiffs' Complaint for breach of fiduciary duty should be dismissed for failure to state a claim because the conduct challenged by Plaintiffs—UBH's "drafting and promulgating" of the level of care and coverage determination guidelines—is a non-fiduciary "settlor function."  Thus, under well-settled case law, such conduct neither implicates any fiduciary duty nor gives rise to any claim for breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA").

2.     Whether Count II in Plaintiffs' Complaint for improper denial of benefits should be dismissed for failure to state a claim because Plaintiffs do not allege any facts establishing that their claims for outpatient mental health benefits meet the requirements for coverage under their health plans, such that Plaintiffs are entitled to those benefits.

3.     Whether Counts III and IV in Plaintiffs' Complaint for contingent injunctive relief and "other appropriate equitable relief," which are each predicated on the same facts and legal theories as Counts I and II of the Complaint, should be dismissed for failure to state a claim because the requested equitable relief is not available when Plaintiffs fail to allege facts to support any ERISA violation by UBH.

LAACTIVE-601716448.8

## MEMORANDUM OF POINTS AND AUTHORITIES

This is an ERISA class action alleging that UBH (a national managed behavioral healthcare company) breached its fiduciary duty to Plaintiffs in setting the terms of coverage under their employer-sponsored health insurance plans and improperly denied benefits to them under those plans.  This case is related to another case pending before this Court—*Wit v. United Behavioral Health*, No. 3:14-CV-02346 (JCS), in which the plaintiffs are represented by the same counsel.  Both cases involve a challenge to the "level of care" and "coverage determination" guidelines created by UBH that determine the scope of coverage for mental health and substance abuse benefits under the plaintiffs' ERISA plans.  (*Wit* involves residential treatment for mental health illnesses, while this case involves outpatient treatment).  Both cases bring four virtually identical causes of action.

In *Wit*, UBH filed a motion to dismiss Counts I, III and IV, contending that those counts were an attempt to repackage their denial-of-benefits claim into four separate (and duplicative) causes of action under ERISA.  In response, the *Wit* plaintiffs made clear that their facial challenge to the *creation* of the guidelines in Count I was "separate and apart" from UBH's *application* of those guidelines to adjudicate Plaintiffs' claims.[1]  The *Wit* plaintiffs also clarified that—rather than challenging the creation of the guidelines in the abstract—they were challenging UBH's role in creating and drafting the language of the guidelines for purposes of defining the scope of coverage under their specific ERISA plans.[2]  The Court denied the motion to dismiss the *Wit* plaintiffs' claims, holding that the issues raised by UBH on that motion were "more appropriately resolved at a later stage of the case, when the record has been developed."

With the benefit of the pleadings and the positions taken by the plaintiffs in response to UBH's motion to dismiss in *Wit*, it is now clear that, in Count I in this case, Plaintiffs challenge UBH's discrete role in "drafting and promulgating" the guidelines in a way that limits the benefits

---

[1] Reporter's Transcript of Proceedings in *Wit v. United Behavioral Health*, No. 3:14-cv-02346 (N.D. Cal. Nov. 19, 2014) ("Reporter's Transcript") at 30:1-8 [Dkt. No. 71] (a courtesy copy of the transcript is attached to this Motion as Ex. 1).

[2] Reporter's Transcript at 26:10-14.

DEFENDANT'S MOT. TO DISMISS; MEMO. OF P&A
IN SUPPORT THEREOF; CASE NO. 3:14-CV-05337

LAACTIVE-601716448.8

available under their specific ERISA plans.  Further, in Count II, Plaintiffs seek to use ERISA to rewrite the terms of their health insurance plans to include coverage for outpatient mental health and substance abuse benefits that is currently *excluded* under the terms of their plans, and seek to have their claims for benefits reprocessed based on the new guidelines.

The gravamen of Plaintiffs' Complaint is that UBH breached its fiduciary duty by drafting coverage guidelines that are more restrictive than Plaintiffs believe they should be.  Plaintiffs allege that this constitutes a breach of an ERISA fiduciary duty because UBH was delegated with responsibility to *administer* mental health benefits under their plans and, that as a fiduciary, UBH purportedly was required to *draft* the guidelines in a manner that is solely in the interests of plan participants and for the exclusive purpose of providing benefits to participants and their beneficiaries.

Plaintiffs' Complaint, and each of the counts therein, are misdirected under settled ERISA law.  Plaintiffs' theory of the case ignores that the creation and drafting of coverage guidelines—which define the scope of coverage under an ERISA plan—is a "settlor function," not a fiduciary one.  *See Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1292 (10th Cir. 1999) (a third-party claims administrator "does not act as a fiduciary when it sets the terms of the plan").  That is because the coverage guidelines constitute part of the ERISA plans themselves.  Thus, UBH's role in setting the terms of the plans—through its creation of the coverage guidelines—is not subject to any fiduciary obligations.

Because Plaintiffs' entire case is built upon this faulty premise, Plaintiffs' Complaint should be dismissed with prejudice.  Without a proper foundation, each of Plaintiffs' claims—like a proverbial house of cards—inevitably topples, as follows:

First, Plaintiffs' claims for breach of fiduciary duty fail as a matter of law because there can be no breach of a fiduciary duty when the challenged conduct is not subject to a fiduciary obligation.  UBH's creation of the level of care and coverage determination guidelines involved the setting of plan terms and is a settlor (not a fiduciary) function.  *See Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1102 (9th Cir. 2004).  Such conduct is not subject to judicial review under ERISA.  *See Jones*, 169 F.3d at 1292 (internal coverage guidelines created by third-

1  party mental health claims administrator "constituted part of the Plan and thus lay outside the

2  scope of judicial review").

3      Second, Plaintiffs' claims for recovery of benefits fail because Plaintiffs admit that their

4  claims were denied because they failed to satisfy UBH's level of care and coverage determination

5  guidelines, and thus the benefits they seek are not covered under their health plans.  Notably,

6  Plaintiffs do not allege that UBH failed to follow the coverage guidelines or made a mistake in

7  applying them to their claims.  Instead, Plaintiffs allege that once the guidelines are revised, their

8  benefits should be paid.  Based on Plaintiffs' own allegations, Plaintiffs' benefits claims were

9  properly denied because the treatments sought by Plaintiffs were excluded from coverage under

10  the plans.  "To adhere to the plan is not a breach of fiduciary duty." *Dzinglski v. Weirton Steel*

11  *Corp.*, 875 F.2d 1075, 1080 (4th Cir. 1989).

12      Third, Plaintiffs' claims for equitable relief fail because they are contingent on a showing

13  of liability under ERISA.  Plaintiffs have not adequately alleged any ERISA violation giving rise

14  to a remedy.  *See Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996) (claims for "appropriate

15  equitable relief" under Section 502(a)(3) available only where there has been an ERISA

16  violation).  Counts III and IV are predicated entirely on a finding of liability in Counts I and II,

17  and they do not assert any additional grounds for liability.  Because the alleged breaches of

18  fiduciary duty in Counts I and II fail, Counts III and IV necessarily fall along with them.

19                          **STATEMENT OF FACTS**

20      A.   **Plaintiffs Allege That They Are Participants or Beneficiaries of ERISA Plans
            That Provide Coverage for Mental Health and Substance Abuse Treatment.**

21

22      Plaintiffs allege that they (or their family members) were members of employer-sponsored

23  employee welfare benefit plans governed by ERISA.  Complaint ¶ 5.  Plaintiffs allege that UBH

24  performs two separate roles in connection with Plaintiffs' plans.  First, "UBH is responsible for

25  drafting and promulgating the internal level of care and coverage determination guidelines,"

26  which are used to determine whether a particular service or treatment is covered under the plans.

27  *Id.* ¶ 20.  Second, UBH "also adjudicates mental healthcare and substance abuse claims" as the

28  "Mental Health/Substance Use Disorder Designee" under each plan.  *Id.* ¶¶ 20, 50, 79, 95.

LAACTIVE-601716448.8

1   According to Plaintiffs, the Certificate of Coverage "governs" the terms of each ERISA

2   plan.  *Id.* ¶¶ 50, 78, 95.  For each plan, the Certificate of Coverage sets forth the benefits provided

3   under the plan, as well as any services or treatments excluded from coverage.  *Id.*  Plaintiffs

4   allege that each plan provides coverage for outpatient mental health and substance abuse

5   treatment.  *Id.* ¶ 6.  The relevant provisions relating to such benefits are summarized below.[3]

6   _Alexander Plan_.  The Alexander Plan provides coverage for medically necessary "Mental

7   Health Services," on both an inpatient and outpatient basis.  *See* Stalinski Decl. ¶ 3, Ex. B

8   (Granite Construction Health Plan) at Ex. B-000043.  The Alexander Plan designates UBH as the

9   entity that determines eligibility for such mental health and substance abuse services according to

10  criteria determined by UBH.  *Id.* (UBH "determines coverage for all levels of care").  Plaintiffs

11  even concede that the plan specifically *excludes* from coverage certain Mental Health Services,

12  including any treatment that "is inconsistent with generally accepted standards of care *or* UBH's

13  LOCs [level of care guidelines]."  Complaint ¶ 16 (emphasis added).

14  The text of that exclusion is as follows:

15  Section 2: Exclusions and Limitations

16  . . .

17  H.  Mental Health

18  Exclusions listed directly below apply to services described under

19  Mental Health Services in Section 1: Covered Health Services.

20  . . .

21  9.  Services or supplies for the diagnosis or treatment of Mental

22  ─────────────────

23  [3] Although the Certificates of Coverage for each plan are not attached to Plaintiffs' Complaint, the Complaint quotes from and extensively refers to those documents, which are central to Plaintiffs' claims.  *See* Complaint ¶¶ 50-55, 78-83, 95-102.  Indisputably authentic copies of the most recent Certificates of Coverage available for each plan, as well as versions referenced in the Complaint, are submitted concurrently with this Motion.  *See* Declaration of Jane E. Stalinski ("Stalinski Decl.") ¶¶ 3-4 (authenticating Exhibits A-D); Declaration of Maryann Britto ("Britto Decl.") ¶ 4 (authenticating Exhibit E).  The Court may properly consider these documents on a motion to dismiss.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (the court may consider a document not attached to the complaint on a motion to dismiss if (1) the complaint refers to the document; (2) the document is central to plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the motion).

28

DEFENDANT'S MOT. TO DISMISS; MEMO. OF P&A
IN SUPPORT THEREOF; CASE NO. 3:14-CV-05337

LAACTIVE-601716448.8

1    Illness that, in the reasonable judgment of the Mental

2    Health/Substance Use Disorder Designee, are any of the following:

3    . . .

4    Not consistent with *the Mental Health/Substance Use Disorder*

5    *Designee's level of care guidelines* or best practices as modified

6    from time to time.

7  Stalinski Decl. ¶ 3, Ex. B at Ex. B-000055–000056 (emphasis added).

8        *Haffner Plan*.  The relevant provisions in the Haffner Plan regarding coverage—and

9  exclusions from coverage—for outpatient mental health and substance abuse services are

10 identical to the Alexander Plan.[4]  *See id.* ¶ 4, Ex. C (Science Systems and Applications, Inc.

11 Health and Medical Plan) at Ex. C-000053, 000069-000070.  Thus, the Haffner Plan similarly

12 excludes treatments that are inconsistent with UBH's level of care guidelines.  *Id.*

13       *Klein Plan*.  The Klein Plan provides coverage for the "diagnosis and treatment of mental,

14 nervous or emotional disorders or ailments received on an outpatient or inpatient basis," but only

15 when the service is "Medically Necessary."  Britto Decl. ¶ 3, Ex. E (Legal Aid Society Group

16 Health Plan) at Ex. E-000165.  Coverage is also subject to "Utilization Review," which means

17 that all mental health claims may be reviewed "to determine whether or not the proposed service .

18 . . is Medically Necessary and a Covered Service under the Certificate."  *Id.* at Ex. E-000061.

19 The Klein Plan specifically states that, in developing utilization review protocols during that

20 process, it "utilizes guidelines from outside sources, which include external consultants," and that

21 in some cases, it will "review and adopt some or all of the protocols that they develop as [its]

22 own."  *Id.* at Ex. E-000128.  Under the plan language, a claim for treatment that is inconsistent

23

24       [4] Prior to 2013, the Haffner Plan similarly excluded coverage for any treatments that were "not medically necessary," even if they were "recommended or prescribed by a Physician" or was

25 "the only available treatment."  Stalinksi Decl. ¶ 4, Ex. D at Ex. D-000058-61.  Benefits available under the prior plan were also subject to guidelines that were developed, in part, "by medical staff

26 and outside medical consultants" and other "professionals or publications."  *Id.* at Ex. D-000037. UBH was designated as the entity that determines coverage for outpatient mental health and

27 substance abuse services.  *Id.* at Ex. D-000047 (outpatient mental health treatment "must be provided by or under the direction of the Mental Health/Substance Abuse Designee").

28

-6-                    DEFENDANT'S MOT. TO  DISMISS; MEMO. OF P&A
                                       IN SUPPORT THEREOF; CASE NO. 3:14-CV-05337

with such utilization review guidelines is not Medically Necessary and is excluded from coverage. *Id.* at Ex. E-000061, 000065.

**B.   Plaintiffs Claim They Needed Mental Health Treatment in an Outpatient Facility or Represent a Family Member Who Needed Such Treatment.**

Plaintiffs allege that they either required mental health or substance abuse treatment in an outpatient facility within the last two years, or represent a family member who required such treatment.   Complaint ¶¶ 56-73, 84-92, 104-121.  Plaintiffs contend that they submitted claims for such outpatient treatment under the terms of their plans, and UBH adjudicated those claims and denied them in whole or in part. *Id.*  Plaintiffs contend that the denials were based on UBH's application of level of care and coverage determination guidelines that UBH created, which Plaintiffs allege do not comport with "generally accepted" medical standards. *Id.* ¶ 18.

For example, Plaintiff Alexander alleges that he sought coverage for intensive outpatient substance abuse treatment for his son, but the claims were denied because they failed to meet the "Coverage Determination Guideline criteria for intensive outpatient treatment." *Id.* ¶ 67.  He claims that UBH "ignored generally accepted medical standards and applied UBH's CDG" in denying those claims. *Id.* ¶ 71.  Similarly, Plaintiff Haffner alleges that his claims for outpatient psychotherapy were denied based on "UBH Coverage Determination Guidelines." *Id.* ¶ 106.  In particular, he claims that UBH "relied on UBH's CDG for Personality Disorders, which specifically exempts treatment for borderline personality disorder from primary consideration for reimbursement," in denying those claims. *Id.* ¶ 112.  Plaintiff Klein's claims for outpatient psychotherapy were denied on similar grounds.  She alleges that UBH determined that coverage for her treatment was available under her plan only "at the reduced frequency of one standard session per week," and that "[b]ased on [the] UBH Level of Care Guidelines for Mental Health Outpatient Level of Care," it was determined that "no further authorization can be provided for multiple weekly therapy visits." *Id.* ¶ 88.

Neither Alexander, Haffner, nor Klein alleges that his or her claims met the requirements for coverage under the applicable level of care or coverage determination guidelines.  Nor do they contend that UBH failed to follow those guidelines in denying their claims.  In fact, they

DEFENDANT'S MOT. TO DISMISS; MEMO. OF P&A
IN SUPPORT THEREOF; CASE NO. 3:14-CV-05337

LAACTIVE-601716448.8

1    specifically allege that UBH applied those guidelines.  *See, e.g., id.* ¶¶ 71 ("applied UBH's

2    CDG"), 112 ("relied on UBH's CDG for Personality Disorders"), 118 ("predicated his coverage

3    denial on UBH's CDGs").  They allege that the treatments sought "*would have been* covered" if

4    the guidelines had been written in a way that is consistent with their definition of "generally

5    accepted treatment standards." *Id.* ¶ 18 (emphasis added).  Plaintiffs claim that UBH's conduct

6    constituted wrongful denials of benefits and breaches of fiduciary duties under ERISA.

7              **C.     Plaintiffs Assert Four Causes of Action Against UBH in Their Complaint.**

8              Plaintiffs plead four causes of action in the Complaint, all of which stem from Plaintiffs'

9    facial challenge to the level of care and coverage determination guidelines created by UBH.

10             In Count I, Plaintiffs assert a claim for breach of fiduciary duty under 29 U.S.C. §

11   1132(a)(1)(B) ("ERISA § 502(a)(1)(B)").  Plaintiffs allege that "UBH is an ERISA fiduciary"

12   because it makes "mental health and substance abuse benefit determinations under Plaintiffs'

13   Plans." Complaint ¶ 134.  Plaintiffs further allege that UBH breached its fiduciary duty by

14   "adopting the restrictive level of care and coverage determination guidelines" that are "far more

15   restrictive than those that are generally accepted." *Id.* ¶ 136.  Plaintiffs bring Count I "to clarify

16   Plaintiffs' right to future benefits and enforce their rights under their Plans." *Id.* ¶ 133.  Plaintiffs

17   seek declaratory relief and an order directing "UBH to stop utilizing the guidelines . . . and

18   instead adopt, develop, and utilize guidelines that are consistent with generally accepted medical

19   practices." *Id.* at p. 51 (Requested Relief D and E).

20             In Count II, Plaintiffs assert a claim for improper denial of benefits under ERISA §

21   502(a)(1)(B).  Plaintiffs allege that their claims for outpatient mental health and substance abuse

22   benefits were improperly denied because UBH applied its existing level of care and coverage

23   determination guidelines instead of broader guidelines that would not exclude Plaintiffs' claims.

24   *Id.* ¶¶ 139-143.  Notably, Plaintiffs do *not* allege that UBH improperly applied the existing

25   guidelines.  Nor do they allege that their claims satisfy the criteria for coverage set forth in the

26   existing guidelines.  Instead, Plaintiffs seek an order requiring "UBH to reprocess claims for

27   outpatient and [intensive outpatient] treatment that it previously denied (in whole or in part)

28   pursuant to *new* guidelines that are consistent with generally accepted medical standards." *Id.* at

1   p. 51 (Requested Relief F) (emphasis added).

2        In Count III, Plaintiffs assert a contingent fiduciary duty claim for injunctive relief under

3   29 U.S.C. § 1132(a)(3)(A) ("ERISA § 502(a)(3)(A)").  The claim is brought "only to the extent

4   that the Court finds that injunctive relief sought to remedy Counts I and/or II are [sic]

5   unavailable."  *Id.* ¶ 145.  Plaintiffs do not allege any new facts or legal theories in Count III.  The

6   request for relief is predicated entirely on the alleged ERISA violations in Counts I and II.

7        In Count IV, Plaintiffs assert a contingent fiduciary duty claim for "appropriate equitable

8   relief" under 29 U.S.C. § 1132(a)(3)(B) ("ERISA § 502(a)(3)(B)").  Plaintiffs allege that "UBH

9   caused its corporate affiliates to be unjustly enriched" by "UBH's breaches of fiduciary duty

10   described above."  *Id.* ¶¶ 150-151.  Plaintiffs seek an order requiring UBH to "pay a surcharge or

11   other make whole relief" to Plaintiffs and the class.  *Id.* at p. 51 (Requested Relief G).  Like

12   Count III, Plaintiffs do not allege any new facts or legal theories in support of Count IV, which is

13   predicated entirely on the alleged ERISA violations in Counts I and II.

14                                    **ARGUMENT**

15        Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint

16   for failure to state a claim.  On a motion to dismiss, the Court will accept all well-pleaded facts as

17   true and consider those facts in the light most favorable to the plaintiff.  *See Zadrozny v. Bank of*

18   *New York Mellon*, 720 F.3d 1163, 1167 (9th Cir. 2013).  The Court is not required, however, to

19   accept conclusory allegations, unsupported conclusions, or unwarranted inferences, even if cast in

20   the form of factual allegations.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

21   Nor is the Court required to "accept as true conclusory allegations that are contradicted by

22   documents referred to in the complaint."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d

23   1025, 1031 (9th Cir. 2008).

24        To survive dismissal, a plaintiff must provide the grounds upon which his claim rests

25   through specific factual allegations sufficient to raise a right to relief above the speculative level.

26   *See Coronado v. Chevy Chase Bank, FSB*, 554 F. App'x. 549, 550 (9th Cir. 2014) (quoting

27   *Twombly*, 550 U.S. at 555). The complaint must contain sufficient factual matter such that it

28   states a plausible claim for relief.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "A claim has

DEFENDANT'S MOT. TO DISMISS; MEMO. OF P&A
IN SUPPORT THEREOF; CASE NO. 3:14-CV-05337

1  facial plausibility when the pleaded factual content allows the court to draw the reasonable

2  inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  Although the

3  "plausibility standard is not akin to a 'probability requirement,'" it does require "more than a

4  sheer possibility that a defendant has acted unlawfully." *Id.*

5          ERISA plaintiffs must fully satisfy these pleading standards.  Notably, consistent with

6  *Twombly* and *Iqbal*, in *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2470-2471 (2014),

7  the Supreme Court emphasized that courts have an obligation to scrutinize ERISA class actions to

8  separate the "plausible sheep from the meritless goats."  This requires a court to engage in a

9  "careful, context-sensitive scrutiny" of a complaint's allegations to ensure that, prior to engaging

10  in costly discovery, it properly states a claim for relief.  *Id.* at 2470.

**I.     Plaintiffs Fail to State a Claim in Count I Because UBH's "Drafting and Promulgating" of Level of Care and Coverage Determination Guidelines Are Not Fiduciary Acts Subject to Judicial Review Under ERISA.**

13          Plaintiffs allege that UBH is an ERISA fiduciary because it administers mental health

14  benefits under their plans.  Complaint ¶ 134.  Plaintiffs further allege that UBH breached its

15  fiduciary duty by drafting and promulgating level of care and coverage determination guidelines

16  in a way that excludes coverage for outpatient mental health services they sought.  *See id.* ¶¶ 136-

17  138.

18          Plaintiffs fail to state a cognizable claim for breach of fiduciary duty in Count I.  The

19  claim should be dismissed with prejudice because UBH's creation of the level of care and

20  coverage determination guidelines is a matter of plan design that falls outside the scope of any

21  fiduciary duty under ERISA.

**A.     Plan Design Concerns a Non-Fiduciary "Settlor Function," Which Does Not Give Rise to a Claim for Breach of Fiduciary Duty.**

24          Plaintiffs appear to contend that every act relating to an ERISA plan is a fiduciary act.

25  That is not the case.  Under ERISA, an entity is a fiduciary with respect to a plan only if it

26  exercises discretionary authority over the management or administration of that plan.  *See* 29

27  U.S.C. § 1002(21)(A).  Thus, a fiduciary must be someone acting in the capacity of manager,

28  administrator, or financial adviser to a plan.  *See Pegram v. Herdrich*, 530 U.S. 211, 222 (2000).

1   In contrast, it is well-established law that creating, designing, modifying, drafting or

2   terminating the terms of an ERISA welfare plan are functions of "plan design" that are not

3   undertaken in a fiduciary capacity.  The Supreme Court has repeatedly held that such actions

4   concern non-fiduciary "settlor functions" that neither implicate fiduciary duties under ERISA nor

5   give rise to any claim for breach of fiduciary duty.  *See, e.g.*, *Curtiss-Wright Corp. v.*

6   *Schoonejongen*, 514 U.S. 73, 78 (1995) ("Employers or other plan sponsors are generally free

7   under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans.");

8   *Lockheed Corp. v. Spink*, 517 U.S. 882, 891 (1996) ("the act of amending a pension plan does not

9   trigger ERISA's fiduciary provisions"); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444

10  (1999) (a "decision to amend a pension plan concerns the composition or design of the plan itself

11  and does not implicate the employer's fiduciary duties which consist of such actions as the

12  administration of the plan's assets").

13      An ERISA plan is defined as "a set of rules that define the rights of a beneficiary and

14  provide for their enforcement."  *Pegram*, 530 U.S. at 223. "Rules governing collection of

15  premiums, definition of benefits, submission of claims, and resolution of disagreements over

16  entitlement to services are the sorts of provisions that constitute a plan." *Id.*  Such guidelines or

17  rules do not need to be specifically listed in plan documents to constitute part of the plan.  *Id.*

18      An employer—or other authorized party, such as a third-party claims administrator—

19  "may draft a benefits plan any way it wishes; it does not act as a fiduciary when it sets the terms

20  of the plan."  *See Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1292 (10th Cir. 1999)

21  (medical necessity criteria created by third-party claims administrator not subject to judicial

22  review under ERISA).  This includes the decision to include or exclude coverage for certain

23  health care services.  *See, e.g.*, *Daniel F. v. Blue Shield of California*, 2011 WL 830623, *7 (N.D.

24  Cal. Mar. 3, 2011) (recognizing that health insurer had the authority to "unambiguously exclude

25  coverage for 'residential care'" from the plan's mental health benefits); *Averheart v. U.S. WEST*

26  *Management Pension Plan*, 46 F.3d 1480, 1488 (10th Cir. 1994) (the "selective provision of

27  benefits" under an ERISA plan "was a matter of plan design not subject to ERISA's fiduciary

28  standards and judicial review").  Making such decisions is a settlor—and not a fiduciary—

-11-

1   function even if they are made by the same person or entity that also adjudicates claims or

2   otherwise administers the plan.  *See Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1158 (3d

3   Cir. 1990) (fiduciary duties under ERISA do not attach "to particular persons, but to particular

4   persons *performing particular functions*") (emphasis added).

5        **B.    UBH's Creation and Promulgation of Level of Care and Coverage Guidelines
              Is a Settlor Function That Is Not Subject to Any Fiduciary Obligations.**

6

7        Plaintiffs' fiduciary duty claim in Count I fails as a matter of law because the level of care

8   and coverage determination guidelines Plaintiffs challenge are part of their ERISA plans, and

9   UBH's creation of those guidelines is not subject to judicial review under ERISA.

10       Coverage determination guidelines created by a third-party claims administrator to

    determine the scope of coverage under an ERISA plan constitute part of the plan's terms and are
11
    not subject to judicial review under ERISA.  *See Jones*, 169 F.3d at 1292.  The *Jones* case is
12
    directly on point.  In that case, the plaintiff brought a claim challenging the denial of benefits for
13
    inpatient alcohol abuse treatment based on his failure to meet certain coverage criteria drafted by
14
    a third-party administrator, APM.  *Id.* at 1289-90.  Plaintiff challenged the coverage criteria as
15
    "arbitrary and capricious," but the trial court granted summary judgment in favor of defendant,
16
    noting that "the APM criteria constituted part of the Plan and thus lay outside the scope of judicial
17
    review."  *Id.* at 1290.  The court of appeal affirmed, holding that because "the APM criteria [was]
18
    a matter of Plan design and structure, rather than implementation," they did not implicate any
19
    fiduciary duties and were not subject to judicial review.  *Id.* at 1292.  The court noted that the
20
    Plan Summary authorized APM to determine eligibility for substance abuse treatment according
21
    to its own criteria.  "The APM criteria did not need to be listed in Plan documents to constitute
22
    part of the Plan."  *Id.*  Thus, the court concluded that "the APM criteria were part of the language
23
    of the Plan shielded from judicial review."  *Id.*
24
         Similarly, courts have held that internal guidelines that set forth the medical necessity
25
    criteria used to determine coverage under an ERISA plan—like the UBH guidelines here—are
26
    part of the plan and constitute plan documents in other contexts.  *See, e.g., Eden Surgical Center
27
    v. Budco Group, Inc.*, 2010 WL 2180360, *6 (C.D. Cal. 2010) ("internally developed criteria"
28

DEFENDANT'S MOT. TO DISMISS; MEMO. OF P&A
IN SUPPORT THEREOF; CASE NO. 3:14-CV-05337

1 held to be "instruments under which the plan is established or operated," subject to ERISA's

2 mandatory disclosure obligations under 29 U.S.C. § 1024(b)(4)). "Where, as here, a plan states

3 that it relies upon certain instruments to determine what claims and amounts are reimbursable

4 under the plan, those instruments can be said to 'govern' (or restrict) the operation of the plan."

5 *Id.* Likewise, "utilization review criteria" used for making determinations regarding medical

6 necessity have been held to be "the types of rules, practices and procedures which define how the

7 plan is operated." *Teen Help, Inc. v. Operating Eng'rs Health & Welfare Trust Fund*, 1999 WL

8 1069756, *3 (N.D. Cal. Aug. 24, 1999) (citation and internal quotations omitted). Such

9 utilization review criteria are documents that "govern how the plan operates" and are therefore

10 subject to ERISA's disclosure obligations with respect to plan documents.[5] *Id.*

11       Here, Plaintiffs' breach of fiduciary duty claim alleges that UBH violated fiduciary duties

12 when it created and drafted the level of care and coverage determination guidelines. *See*

13 Complaint ¶ 136. Because level of care and coverage determination guidelines are "a matter of

14 Plan design and structure," the act of drafting those guidelines is a settlor function that is "not

15 subject to ERISA's fiduciary standards and judicial review." *Jones*, 169 F.3d at 1292. In short,

16 creation of the coverage guidelines is not a fiduciary act because the guidelines set the terms of

17 Plaintiffs' ERISA plans (including which mental health services are covered—and excluded from

18 coverage—under the plans). This is evident from the language of the plans themselves.[6]

19       For example, the Alexander Plan and Haffner Plan both authorize UBH to determine

20 eligibility for mental health and substance abuse treatment according to its own criteria. *See*

21 Stalinski Decl. ¶¶ 3-4, Ex. B at Ex. B-000043 (UBH "determines coverage for all levels of care");

22

23      [5] In so holding, Judge Walker also relied on an Advisory Opinion issued by the Secretary of Labor stating that "any document or instrument that specifies procedures, formulas,

24 methodologies, or schedules to be applied in determining or calculating a participant's or beneficiary's benefit entitlement under an employee benefit would constitute an instrument under

25 which the plan is established or operated," regardless of whether the document is formally designated as a "plan document." *Teen Help*, 1999 WL 1069756 at *3 (citations omitted).

26      [6] In the *Wit* case, counsel stated as much, telling this Court that Count I challenges "the level of care guidelines . . . called for by the plans" and that "UBH has to create them pursuant to

27 the plans because the plans say we're going to create these level of care guidelines and we're going to subject your claims to them." Reporter's Transcript at 26:10-14.

28

DEFENDANT'S MOT. TO DISMISS; MEMO. OF P&A
IN SUPPORT THEREOF; CASE NO. 3:14-CV-05337

LAACTIVE-601716448.8

1   Ex. C at Ex. C-000053 (same).  In addition, those plans incorporate the guidelines into the plans

2   by specifically excluding from coverage any service that "in the reasonable judgment" of UBH is

3   "[n]ot consistent with [UBH's] *level of care guidelines* or best practices as modified from time to

4   time."  *Id.* at Ex. B-000055–000056 (emphasis added), Ex. C-000069–000070 (emphasis added).

5   Similarly, the Klein Plan excludes from coverage all services that are not "Medically Necessary,"

6   including any treatment that is determined to be medically unnecessary under the plan's

7   "Utilization Review protocols."  Britto Decl. ¶ 3, Ex. E at Ex. E-000061, 000128.  The Utilization

8   Review protocols incorporate "guidelines from outside sources," including UBH's coverage

9   guidelines.  *Id.* at Ex. E-000128.  Pursuant to those protocols and guidelines, treatments that are

10  not the "most appropriate supply or level of service which can safely be provided" are not

11  "Covered Services" under the plan.  *Id.* at Ex. E-000153.

12          Count I of the Complaint should therefore be dismissed with prejudice because it fails to

13  state a claim.[7]  *See Averheart*, 46 F.3d at 1488 (because challenged conduct "was done in the

14  [defendant's] capacity as 'drafter,' it was not subject to ERISA's fiduciary standards").  It is

15  appropriate to do so now, on a motion to dismiss, because Plaintiffs' claims fail on their face, and

16  the results of unnecessary discovery will not change that result.  As the Ninth Circuit stated in

17  *Wright*, "any suggestion by Plaintiffs that further discovery is necessary to determine whether

18  [defendant] acted as a fiduciary is contrary to three leading Supreme Court decisions—*Lockheed*,

19  *Hughes Aircraft*, and *Pegram*[]—all of which affirmed Rule 12(b)(6) dismissals of ERISA claims

20  on the ground that the conduct of the defendant was not that of a 'fiduciary,' but rather a

21  'settlor.'"  *Wright*, 360 F.3d at 1102 (citation omitted).

22

23

---

24          [7] To the extent Plaintiffs contend that they are entitled to bring Count I to "clarify" their
    right to future benefits, Complaint ¶ 133, such argument lacks merit.  Plaintiffs have not alleged
25  that any terms in their ERISA plans are ambiguous and in need of clarification.  In fact, Plaintiffs
    concede that those guidelines clearly *exclude* coverage for the services sought by Plaintiffs.  *See,*
26  *e.g., id.* ¶ 112.  Rather than seeking to "clarify" the terms of the plans, Plaintiffs are really looking
    to rewrite the plans to substitute the mental health services they believe *should be* covered for the
27  ones *actually* covered under the plans.  But "courts are not at liberty to rewrite the terms of an
    ERISA plan."  *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 215 (3d Cir. 2001).

28

DEFENDANT'S MOT. TO DISMISS; MEMO. OF P&A
IN SUPPORT THEREOF; CASE NO. 3:14-CV-05337

LAACTIVE-601716448.8

1

**II.      Plaintiffs Fail to State a Benefits Claim Because They Do Not Allege That the Mental Health Benefits They Seek Are Covered Under the Terms of Their ERISA Plans.**

2

3          Plaintiffs' claim for improper denial of benefits in Count II fails because Plaintiffs do not

4    allege that they are entitled to the requested benefits under the terms of their ERISA plans.

Indeed, they admit such benefits are *excluded* from coverage.

5

6          An ERISA plan member's entitlement to benefits is set by the terms of the plan, which is

7    interpreted under traditional rules of contract construction.  *See US Airways, Inc. v. McCutchen*,

8    133 S. Ct. 1537, 1549 (2013) ("Courts construe ERISA plans, as they do other contracts, by

'looking to the terms of the plan' as well as to 'other manifestations of the parties' intent.'");

9
*Gilliam v. Nevada Power Co.*, 488 F.3d 1189, 1194 (9th Cir. 2007) (an "ERISA plan is a

10   contract" which is interpreted using contract principles derived from state law).

11         Plaintiffs concede that their plans exclude from coverage any outpatient mental health

12   service that is not medically necessary or is inconsistent with UBH's level of care or coverage

13   determination guidelines.  *See* Complaint ¶ 16.  Plaintiffs also admit that their claims were denied

14   because they failed to meet the level of care and coverage determination guidelines applicable to

15   their claims.  *See id.* ¶¶ 71, 112, 118.  They do *not* allege that their claims actually meet the

16   requirements for coverage under those guidelines.  Nor do they allege UBH failed to follow the

17   guidelines or otherwise made a mistake in applying them to their claims.

18         Rather, Plaintiffs argue that UBH should have drafted the guidelines differently to include

19   the benefits that they seek.  Plaintiffs then allege that their claims "*would have been* covered" if

20   the guidelines had been drafted in the manner that they propose.  *Id.* ¶ 18 (emphasis added).  In

21   fact, Plaintiffs specifically seek an order requiring UBH to "reprocess" claims for outpatient

22   mental health services that were previously denied "pursuant to *new* guidelines that are consistent

23   with generally accepted medical standards."  *Id.* at p. 51 (Requested Relief F) (emphasis added).

24         Since the existing guidelines are part of the ERISA plans (as discussed above), and

25   Plaintiffs admit that they did not meet the requirements for coverage under the existing

26

27

28

-15-                    DEFENDANT'S MOT. TO DISMISS; MEMO. OF P&A
                                                    IN SUPPORT THEREOF; CASE NO. 3:14-CV-05337

guidelines, Plaintiffs' claim for improper denial of benefits fails to state a claim.[8]  There can be no

breach of duty when a fiduciary "acted in accordance with the terms of the plan."  *Dzinglski*, 875

F.2d at 1080.  "To adhere to the plan is not a breach of fiduciary duty."  *Id.*  Contrary to

Plaintiffs' assertions, ERISA does not "create an exclusive duty to maximize pecuniary benefits."

*Collins v. Pension & Ins. Comm. of So. Cal. Rock Prods. & Ready Mixed Concrete Ass'ns*, 144

F.3d 1279, 1282 (9th Cir. 1998).

> Because Plaintiffs do not allege that UBH violated the plans' terms, Count II should be

dismissed with prejudice.

### III.   Plaintiffs Fail to State a Claim for Equitable Relief in Counts III and IV Because Those Counts Are Derivative of Counts I And II, and Plaintiffs Fail to Plead Facts Supporting an ERISA Violation.

> A claim for injunctive relief under ERISA § 502(a)(3)(A) is available where there is a

violation of ERISA "or the terms of the plan."  29 U.S.C. § 1132(a)(3)(A).  Similarly, the "catch-

all" cause of action under ERISA § 502(a)(3)(B) allows a plaintiff to seek "appropriate equitable

relief for injuries caused by violations that § 502 does not elsewhere adequately remedy."  *Varity*

*Corp. v. Howe*, 516 U.S. 489, 512 (1996).  Thus, the equitable relief available under Section

502(a)(3) is necessarily predicated on the establishment of liability for some *violation* of ERISA.

> Here, Counts III and IV assert contingent claims for injunctive relief and "appropriate

equitable relief" under Section 502(a)(3).  *See* Complaint ¶¶ 144-152.  These claims are entirely

---

[8] Contrary to Plaintiffs' allegations, the guidelines do not conflict with the terms of the plans because the plans do not require coverage for all treatments that are consistent with "generally accepted standards of care" as Plaintiffs allege.  Complaint ¶ 46.  The Court need not accept those allegations as true because they are contradicted by documents (the plans themselves) referred to in the Complaint.  *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030-31 (9th Cir. 2008).  For example, while Plaintiffs allege that the Alexander Plan provides coverage for treatment of mental illnesses "consistent with nationally recognized scientific evidence as available, and prevailing medical standards and clinical guidelines," Complaint ¶ 52, Plaintiffs notably omit from the Complaint any reference to all of the *other* requirements necessary to fall within the definition of "Covered Health Service(s)."  Stalinski Decl. ¶ 3, Ex. A at Ex. A-000088–000089.  Indeed, under the plain language of the plan, even if a treatment is consistent with generally accepted standards of care, it is nevertheless not a Covered Health Service if it is excluded "under *Section 2: Exclusions and Limitations*," including the exclusion for treatments that are inconsistent with UBH's "level of care guidelines or best practices."  *Id.* at Ex. A-000053–000054, 000089.

DEFENDANT'S MOT. TO  DISMISS; MEMO. OF P&A
IN SUPPORT THEREOF; CASE NO. 3:14-CV-05337

LAACTIVE-601716448.8

1    derivative of the allegations in Counts I and II regarding UBH's purported breach of fiduciary

2    duties and improper denial of claims.  Plaintiffs do not allege any new facts or legal theories.

3    Because Plaintiffs are not entitled to *any* relief under Counts I and II, their request for contingent

4    remedies under Counts III and IV must also be dismissed as a matter of law.  It goes without

5    saying that where, as here, there has been no ERISA violation, no ERISA remedies are available.

6                                                    **CONCLUSION**

7              For the foregoing reasons, UBH respectfully requests that the Court dismiss Plaintiffs'

8    Complaint in its entirety with prejudice.

9

10   Dated: February 6, 2015                              CROWELL & MORING LLP

11

12                                                       */s/  Jennifer S. Romano*
                                                         Jennifer S. Romano
13                                                       Attorneys for Defendant
                                                         UNITED BEHAVIORAL HEALTH
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOT. TO  DISMISS; MEMO. OF P&A
IN SUPPORT THEREOF; CASE NO. 3:14-CV-05337

LAACTIVE-601716448.8