1
2
3
4                    UNITED STATES DISTRICT COURT
5                  NORTHERN DISTRICT OF CALIFORNIA
6

GARY ALEXANDER, et al.,                    Case No.  14-cv-05337-JCS
         Plaintiffs,                       Related Case No.  14-cv-02346-JCS

    v.                                     **ORDER DENYING UNITED
                                           BEHAVIORAL HEALTH'S MOTION
UNITED BEHAVIORAL HEALTH,                  TO DISMISS PURSUANT TO RULE
                                           12(B)(6)**
         Defendant.
                                           Re: Dkt. No. 22

## I.    INTRODUCTION

Plaintiffs in this putative class action are participants in or beneficiaries of employer-sponsored health plans covered by the Employee Retirement Income Security Act ("ERISA") who allege that Defendant United Behavioral Health ("UBH") wrongfully denied their claims for mental illness and substance abuse-related out-patient treatment.  This case is related to *Wit v. United Behavioral Health*, Case No. C-14-2346 JCS ("*Wit*"), a putative class action challenging UBH's denial of coverage for residential treatment for mental illness and substance abuse.   In both cases, Plaintiffs assert claims for breach of fiduciary duty, improper denial of benefits and equitable relief.   UBH brings a Motion to Dismiss Pursuant to Rule 12(b)(6) ("the Motion").   The Court finds that the Motion is suitable for determination without oral argument and therefore **vacates the Motion hearing set for April 10, 2015 at 2:00 p.m**. pursuant to Civ. L.R. 7-1(b). **The Case Management Conference scheduled for the same time and date shall remain on calendar**.   The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  For the reasons stated below, the Motion is DENIED.

United States District Court
Northern District of California

1    **II.    BACKGROUND**

2        **A.    Complaint**[1]

3        Plaintiffs Jordan Alexander (son of Plaintiff Gary Alexander), Corinna Klein and David

4    Haffner allege that they were participants in or beneficiaries of employer-sponsored health plans

5    ("the Plans") covered by ERISA, which were administered in relevant part by UBH.  Complaint ¶¶

6    5, 7. Plaintiffs allege that their Plans cover mental health and substance abuse treatment, including

7    outpatient treatment, that is "medically necessary, as defined by generally accepted standards of

8    care." *Id.* ¶ 6;  *see also* Declaration of Jane E. Stalinski in Support of Defendant United

9    Behavioral Health's Motion to Dismiss Pursuant to Rule 12(b)(6) ("Stalinski Decl."), Ex. A

10   (United Healthcare Choice Plus Certificate of Coverage for  the Plan 7ED  of Granite Construction

11   (hereinafter, "2013 Alexander Plan")) at 00041 (covered mental health services include "Partial

12   Hospitalization/Day Treatment" and "Intensive Outpatient treatment"), 000088 (covered services

13   must be "[c]onsistent with nationally recognized scientific evidence" and "prevailing medical

14   standards"); *id.*, Ex. D (United Healthcare Choice Plus Certificate of Coverage for  the Plan 4VT

15   MOD 1 of Science Systems and Applications, Inc. (hereinafter, "Haffner Plan")) at 00046 (listing

16   covered out-patient  mental health services), 000061 (exclusion for treatment that is "not

17   medically necessary"), 000098 (covered services must be "[c]onsistent with nationally recognized

18   scientific evidence as available, and prevailing medical standards and clinical guidelines");

19   Declaration of Maryann Britto in Support of Defendant United Behavioral Health's Motion to

20   Dismiss Pursuant to Rule 12(b)(6) ("Britto Decl."), Ex. E (Oxford Health Plan) (hereinafter,

21   "Klein Plan") at 000092 (covering "Medically Necessary Care" of mental illness, including

22   outpatient treatment), 000153 ("Medically Necessary" means, *inter alia*, "[a]ppropriate with

23   regard to standards of good medical practice.").[2]

24   _____

25   [1] In its summary of Plaintiffs' allegations, the Court includes relevant provisions of the health care
     plans at issue in this case, which are incorporated by reference in the Complaint and therefore may

26   be considered on a motion to dismiss.  *See Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir.1994)
     ("documents whose contents are alleged in a complaint and whose authenticity no party questions,

27   but which are not physically attached to the pleading, may be considered in ruling on a Rule
     12(b)(6) motion to dismiss").

28   [2] It is undisputed that the health plans attached to UBH's motion are the ones under which
     Plaintiffs were covered when their claims were denied.  *See* Opposition at 2, n. 1 (stating that

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Plaintiffs allege that the Plans have delegated responsibility for adjudicating mental health

2 and substance abuse claims to UBH and that in light of its "central role in the mental health and

3 substance abuse claim adjudication process," UBH is an ERISA fiduciary as defined by 29 U.S.C.

4 § 1104(a).  Complaint ¶¶ 7, 10.  Plaintiffs further allege that UBH has developed Coverage

5 Determination Guidelines ("CDGs") and Level of Care Guidelines ("LOCs"), which its claims

6 representatives use to make coverage determinations.  *Id*. ¶ 7.  According to Plaintiffs, the CDGs

7 and LOCs "set forth criteria that its claims reviewers are supposed to apply to determine whether a

8 particular level of mental healthcare is both cover by plan terms and consistent with generally

9 accepted standards of care."  *Id*. ¶ 9.  The LOCs, however, do not "instruct UBH reviewers to

10 consult insureds' particular plan terms before deciding whether a given benefit is covered."  *Id*. ¶

11 9.  Further, Plaintiffs allege, the LOCs and CDGs are "much more restrictive than the generally

12 accepted standards of care in the mental health community."  *Id*. ¶ 15.  This is because UBH

13 allegedly "suffers from an inherent conflict of interest in its role as mental health and substance

14 abuse claims administrator" to the extent that "[e]very claim denied by UBH saves money for

15 UBH's corporate affiliates and artificially increases the profits of its parent entity."  *Id*. ¶ 11.

16    Plaintiffs allege that they made claims for coverage of their outpatient treatment and were

17 entitled to receive coverage under the terms of their plans.  *Id*. ¶¶ 63, 84, 87, 103.  Plaintiffs allege

18 further that UBH denied each of their claims for benefits, applying CDGs and/or LOCs that were

19 inconsistent with the terms of the Plans and generally accepted medical standards.  *Id*. ¶¶ 65, 67-

20 68, 88, 91, 108, 110-112.  Plaintiffs allege that UBH breached its fiduciary duty to them by: 1)

21 adopting LOCs and CDGs that are more restrictive than  generally accepted standards in the

22 medical community and therefore inconsistent with the terms of their Plans; and 2) wrongfully

23 denying benefits pursuant to those unduly restrictive guidelines.  *Id*. ¶¶ 17-18.

24    Plaintiffs assert the following claims in their Complaint: 1) violation of fiduciary

25

26

27

28

"[t]he plans in effect when the benefit claims at issue here were denied are [Stalinski Decl.,] Exhibit A (the '2013 Alexander Plan'); Exhibit D (the '2011 Haffner Plan'); and [Britto Decl.,] Exhibit E ('the Klein Plan').  The currently-operative plans, relevant to Plaintiffs' requests for prospective relief, are [Stalinski Decl.,] Exhibit B ('the 2014 Alexander Plan'); Exhibit C (the '2014 Haffner Plan'); and [Britto Decl.] Exhibit E.")

United States District Court
Northern District of California

obligations under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), based on promulgation of improperly restrictive guidelines; 2) improper denial of benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B); 3) equitable relief under ERISA § 502(a)(3)(A), 29 U.S.C. § 1132(a)(3)(A), to the extent injunctive relief is unavailable on the previous two claims; and 4) "other equitable relief" under ERISA § 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B).

### B.   The Related Case

In *Wit*, the plaintiffs alleged that UBH violated its fiduciary duty to them by promulgating improperly restrictive guidelines that are inconsistent with the terms of their health plans and improperly denying coverage of residential treatment for mental health and substance abuse on the basis of those guidelines.  *See* Order Denying Motion to Dismiss Pursuant to Rule 12(b)(6) ("*Wit* Order"), Docket No. 63, at 2-3.  As in this case, the plaintiffs asserted the breach of fiduciary duty and denial of benefits claims as distinct claims (Counts One and Two), both under ERISA § 502(a)(1)(B), and sought reformation of the guidelines under ERISA § 502(a)(1)(B) (in Count One) *and* ERISA § 502(a)(3) (in Count Three).  UBH brought a motion to dismiss, arguing, *inter alia*, that: 1) the breach of fiduciary duty claim failed because UBH was not acting as a fiduciary when it adopted the guidelines, which were merely company-wide business guidelines that were not associated with any particular plan;  2) the plaintiffs could not assert a breach of fiduciary duty claim challenging UBH's guidelines *distinct* from their claim that UBH improperly denied benefits; and 3) the plaintiffs' request for reformation of the guidelines in Count Three (pursuant to ERISA § 502(a)(3)(A)) was duplicative of their claim in Count One (pursuant to ERISA § 502(a)(1)(B)).  *Id*.  The Court found that these challenges should be addressed at a later stage of the case because of the factual nature of the issues raised by UBH.  *Id*. at 17.

### C.   The Instant Motion

In the instant motion, UBH acknowledges that in *Wit*, the Court declined to decide at the pleading stage of the case whether: 1) it was acting as a fiduciary when it created the guidelines challenged by the plaintiffs; or 2) the claims asserted under ERISA § 502(a)(1)(B) and (a)(3) were duplicative.  Motion at 2.  Nonetheless, it asks the Court to address similar issues on the pleadings in this case, asserting that with the "benefit of the pleadings  and positions taken by the plaintiffs

1    in response to UBH's motion to dismiss in *Wit*," it is now clear that the claims in this action fail as

2    a matter of law. *Id*. UBH's primary challenge is to Count One, for breach of fiduciary duty,

3    which is based on the LOCs and CDGs created by UBH to administer the Plans. According to

4    UBH, in adopting these guidelines it does not act as a fiduciary but rather, as a "settlor", because

5    the guidelines are terms of the Plans themselves. *Id*. at 3, 12-14.

6         In support of its position, UBH relies heavily on *Jones v. Kodak Medical Assistance Plan*,

7    169 F.3d 1287, 1292 (10th Cir. 1999), in which the Tenth Circuit held, on summary judgment, that

8    criteria developed by a third-party administrator were expressly incorporated into an ERISA

9    welfare benefits plan and therefore, were not subject to judicial review. *Id*. According to UBH,

10   the guidelines at issue in this case, like the criteria in *Jones*, were also expressly incorporated into

11   Plaintiffs' Plans. *Id*. at 14. In particular, UBH points to language in the Alexander and Haffner

12   Plans that excludes coverage for "any service that 'in the reasonable judgment' of UBH is '[n]ot

13   consistent with [UBH's] levels of care guidelines or best practices as modified from time to

14   time.'" *Id*. (quoting Stalinski Decl., Ex. B (Alexander 2014 Plan) at 000055-000056 (excluding

15   [s]ervices . . . for the diagnosis or treatment of Mental Illness that, in the reasonable judgment of

16   the Mental Health/Substance Use Disorder Designee, are . . [n]ot consistent with the Mental

17   Health/Substance Use Disorder Designee's level of care guidelines or best practices as modified

18   from time to time"); Stalinski Decl., Ex. C (Haffner 2014 Plan) at  000069-000070 (same)).

19        With respect to the Klein Plan, UBH points to language excluding from coverage "all

20   services that are not 'Medically Necessary' including any treatment that is determined to be

21   medically unnecessary under the plan's 'Utilization Review protocols.'" *Id*. (quoting Britto Decl.,

22   Ex. E (Klein 2013 Plan) at 000061 (explaining that all claims for coverage are subject to

23   "Utilization Review" under "Utilization Review policies" and that "[t]his means that our Medical

24   Management Department reviews pertinent medical information in order to determine whether or

25   not the proposed service . . . is Medically Necessary and a Covered Service under the Certificate"),

26   0000128 ("in developing our Utilization Review protocols, [the plan] typically utilizes guidelines

27   from outside sources . . . . We modify these protocols based on Our experience, medical evidence

28   and legislative requirements. All such policies are periodically reviewed and updated")).

United States District Court
Northern District of California

1    According to UBH, because the guidelines are incorporated into the Plans, they are a matter of

2    "plan design and structure," and therefore, as in *Jones*, their creation is not a fiduciary act but the

3    act of a settlor.  *Id*. at 13.   Further, it asserts, as it is apparent that the breach of fiduciary duty

4    claim fails on its face, the claim should be dismissed at the pleading stage of the case.  *Id*. at 14.

5            UBH contends its position finds further support in the fact that guidelines such as the ones

6    at issue in this case have been held, in other contexts, to be plan documents that constitute part of

7    the plan.  *Id*. at 12-13.  In particular,  it asserts, courts have held that such guidelines are subject to

8    ERISA disclosure requirements under 29 U.S.C. § 1024(b)(4) (citing *Eden Surgical Center v.*

9    *Budco Group, Inc.*, Case No. 9-cv-3991 AHM, 2010 WL 2180360, at *6 (C.D. Cal. May 27,

10   2010); *Teen Help, Inc. v. Operating Engineers Health and Welfare Trust Fund*, Case No. 98-cv-

11   2084 VRW, 1999 WL1069756, at * 3 (N.D. Cal. Aug. 24, 1999)).

12            Next, UBH argues that Count Two, for improper denial of benefits, fails on its face

13   because Plaintiffs do not even allege that they are entitled to benefits under UBH's guidelines.  *Id*.

14   at 15.  To the contrary, Plaintiffs allege in the Complaint that their claims were denied because the

15   services they sought fell *outside* the scope of those guidelines.  *Id*.

16            Finally, UBH argues that Counts Three and Four fail because they are "predicated entirely

17   on a finding of liability in Counts [One] and [Two]." *Id*. at 16-17.

18            In their Opposition, Plaintiffs reject UBH's assertion that it acted as a settlor rather than a

19   fiduciary when it adopted the LOCs and CDGs at issue in this case and argue that, at a minimum,

20   the Court should decline to decide the question of whether UBH was acting as a fiduciary until a

21   factual record has been developed, as it did in *Wit*.  Opposition at 1-2.   According to Plaintiffs,

22   they have sufficiently alleged that UBH is a fiduciary, for the purposes of this action, by alleging

23   that UBH is a "claims administrator with the delegated authority to adjudicate claims for mental

24   health and substance use disorder benefits" and therefore acted as a fiduciary when it adopted its

25   internal guidelines governing the administration claims.  *Id*. at 8 (citing 29 U.S.C. § 10021(A)

26   (defining "fiduciary");  *Kyle Rys., Inc. v. Pac. Admin. Servs., Inc.*, 990 F.2d 513, 516 (9th Cir.

27   1993) ("[A]nyone who exercises discretionary authority or control respecting the management or

28   administration of an employee benefit plan" is an ERISA fiduciary)).  To the extent UBH

6

United States District Court
Northern District of California

1    challenges the assertion that it engaged in fiduciary conduct, Plaintiffs argue, this is a mixed

2    question of law and fact that should not be decided on a motion to dismiss.  *Id*. at 9.

3            Plaintiffs further contend that UBH is wrong on the merits.  In particular, Plaintiffs

4    challenge UBH's reliance on *Jones*, arguing that that case is distinguishable and that UBH's broad

5    reading of *Jones* is incorrect.  *Id*. at 10-20.  Plaintiffs distinguish *Jones* on two grounds.  First, they

6    point out that the defendant in *Jones* was the plan itself whereas here, Plaintiffs are suing a third-

7    party administrator.  *Id*. at 10-13.  Similarly, Plaintiffs assert, many of the other cases cited by

8    UBH are not on point because they addressed whether the plan *sponsor* owed fiduciary duties

9    when it made decisions about what benefits to provide.  *Id*. at 11-12 (citing *Curtiss-Wright Corp*.

10   *v. Schoonejongen*, 514 U.S. 73, 75-76 (1995); *Lockheed Corp. v. Spink*, 517 U.S. 882, 885-886

11   (1996); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 436 (1999);  *Averhart v. U.S. W. Mgmt.*

12   *Pension Plan*, 46 F.3d 1480, 1484 (10th Cir. 1994);  *Hozier v. Midwest Fasteners, Inc*., 908 F.2d

13   1155, 1158 (3d Cir. 1990)).   For example, in *Hozier*, the employer was both the plan sponsor and

14   the plan administrator, according to Plaintiffs, and therefore, the court had to determine whether

15   the employer was acting as a settlor or a fiduciary when it took the challenged action.  *Id*.  Here, in

16   contrast, UBH does not play a dual role and therefore, there is no need to determine which

17   function it was playing, Plaintiffs argue.  *Id*. at 12-13.  Further, they assert, UBH *cannot* affect the

18   "design" or terms of the Plans because changes to the Plans can be made only through an official

19   amendment, rider or endorsement executed pursuant to the Plans' provisions and the Plans

20   expressly provide that an agent does not have the authority to change the Policy.  *Id*. at 13 (citing

21   Stalinksi Decl., Ex. A (2013 Alexander Plan) at 00084; *id*., Ex. D (2011 Haffner Plan); Britto

22   Decl., Ex. E (Klein Plan) at 000085).

23           Second, Plaintiffs argue, *Jones* is distinguishable because the court in that case held that

24   the administrator's criteria were "expressly" incorporated into the plan, "apparently finding that

25   the plan sufficiently referred to a given set of existing criteria."  *Id*. at 14.  According to Plaintiffs,

26   there is no such incorporation here because "none of the Plaintiffs' plans even mention UBH's

27   CDGs at all."  *Id*. (citing Complaint ¶¶ 68, 91, 118;  Stalinski Decl., Ex. A (Alexander 2013 Plan)

28   at 000053-000054 (list of Mental Health exclusions and limitations);  *id*., Ex. D at 000061

United States District Court
Northern District of California

1   (Haffner 2011 Plan) (same);  Britto Decl., Ex. E (Klein Plan) at 00072-00073 (same)).  Further,

2   "[a]s for the LOCs, only one of the plans in effect when the Plaintiffs' benefit claims were denied

3   even included the words 'level of care' anywhere, and then only in an exclusion, and only in

4   language so vague it cannot fairly be construed as incorporating by reference a particular set of

5   criteria." *Id.* (citing Stalinski Decl., Ex. A (Alexander 2013 Plan) at 000054 (excluding treatment

6   that is "[n]ot consistent with the Mental health/Substance Use Disorder Designee's level of care

7   guidelines or best practices as modified from time to time")).  Plaintiffs further assert that there is

8   nothing in *Jones* that suggests the Plan had authorized the administrator to modify its criteria at

9   any time, in contrast to the reference to the LOCs in the Plans here, further undermining UBH's

10  assertion that the LOCs, like the criteria at issue in *Jones*, are expressly incorporated into

11  Plaintiffs' Plans as plan terms.  *Id.* at 15.  According to Plaintiffs, "[e]xpressly affording the

12  administrator the authority to modify its criteria at any time, in its own discretion, and presumably

13  even the moment before it adjudicates a given claim, is a far cry from incorporating an existing set

14  of criteria."  *Id.*  Were the court to find that a plan could incorporate by reference a "moving

15  target," Plaintiffs assert, it would be impossible for plan participants to know their rights under the

16  plan, which is a key requirement under ERISA.  *Id.* at 15-16 (citing *Firestone Tire & Rubber Co.*

17  *v. Brusch*, 489 U.S. 101, 103 (1989)).

18          Finally, Plaintiffs argue that UBH's interpretation of *Jones* should be rejected because it is

19  "contrary to how federal courts routinely consider internal guidelines promulgated and relied on

20  by administrators such as UBH."  *Id.*  at 16. Specifically, courts typically treat such guidelines as

21  internal documents developed under the administrator's discretion to interpret the plan rather than

22  as plan terms.  *Id.* (citing *Egert v. Conn. Gen. Life Ins. Co.*, 900 F.2d 1032, 1036 (7th Cir. 1990);

23  *Glista v. Unum Life Ins. Co. of Am.*, 378 F.3d 113, 124 (1st Cir. 2004);  *Mullins v. Conn. General*

24  *Life Ins. Co.*, 880 F. Supp. 2d 713, 719 (E.D. Va. 2010)).  Plaintiffs assert, "if *Jones* means what

25  UBH says it does, an ERISA fiduciary (the claims administrator) in the Tenth Circuit could

26  unilaterally absolve itself of its fiduciary duties by transforming a fiduciary action (interpreting

27  plan terms on a case-by-case basis) into a non-fiduciary action (promulgating 'guidelines,'

28  containing the same interpretations, to be applied to all plans)."  *Id.* at 18.  Such a result "would be

flatly inconsistent with the 'broadly protective' purposes of ERISA," Plaintiffs contend, giving administrators "free reign to re-write plan terms and restrict or broaden coverage as they see fit." *Id.* Such a result is particular troubling under the circumstances here, Plaintiffs assert, where the plan is fully insured and therefore the administrator has a financial interest in minimizing payments to plan participants. *Id.* at 18-19.

In addition, Plaintiffs argue that as a factual matter, it is clear that the CDGs and LOCs, unlike the criteria in *Jones*, are not plan terms, but rather, were created to *assist in the interpretation* of the plan terms. *Id.* at 4-5 (citing Declaration of Meiram Bendat in Support of Plaintiffs' Opposition to Defendant's Motion to Dismiss ("Bendat Decl."), Ex. 1 (2014 Coverage Determination Guideline:  Treatment of Substance-Related & Addictive Disorders," stating that "[t]his Coverage Determination Guideline provides assistance in interpreting behavioral health benefit plans . . ."); *id.*, Ex. 2 (2014 Level of Care Guidelines, stating that "[t]he Level of Care Guidelines is a set of objective and evidence-based behavioral health criteria used to standardize coverage determinations, promote evidence-based practices, and support members' recovery, resilience, and wellbeing.  The Level of Care Guidelines is derived from generally accepted standards of practice for the treatment of behavioral health conditions")). Similarly, Plaintiffs assert, the terms of the Plans make clear that the guidelines are not part of the Plans. *Id.* at 20. For example, they specify what documents constitute "the entire agreement" between the insured and the plan without any mention of these guidelines. *Id.* at 20 (citing  Stalinski Decl., Ex. A (Alexander 2013 Plan) at 000087 (specifying that "entire policy" consists of Certificate of Coverage, Schedule of Benefits, Enrolling Groups application, and any Riders and/or Amendments); *id.*, Ex. D (Haffner 2011 Plan) at 000096 (same)).  The Plans also set forth a specific process for amendment and "do not contemplate that the mere adoption of internal guidelines by a claims administrator could possibly alter the plan terms," Plaintiffs assert.  *Id.* (citing Stalinski Decl., Ex. A (Alexander 2013 Plan) at 000084 (changes must be made by Amendment or Rider signed by UHIC officer);  *id.*, Ex. D (Haffner 2011 Plan) at 000094 (same); Britto Decl., Ex. E (Klein Plan) at 000085 (changes "can be made only through an endorsement authorized and signed by one of Our officers")).

United States District Court
Northern District of California

9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs also reject UBH's reliance on cases that address ERISA disclosure guidelines under 29 U.S.C. § 1024(b)(4) in support of its assertion that UBH's guidelines should be treated as plan terms. *Id*. at 21. According to Plaintiffs, "*Eden Surgical* and *Teen Help* merely stand for the proposition that internal claims review criteria may be subject to mandatory disclosure as 'instruments under which the plan is established or *operated*.'" *Id*. (quoting 29 U.S.C. § 1024(b)(4)) (emphasis added in Plaintiffs' brief). Plaintiffs acknowledge that UBH's guidelines are used to *operate* the Plans but argues that this does not mean the guidelines constitute plan terms or "preclude a finding that UBH acted in a fiduciary capacity when it formulated them." *Id*.

With respect to Count Two, for improper denial of benefits, Plaintiffs argue that they have adequately alleged this claim and that UBH's position is based on the incorrect premise that Plaintiffs must allege that UBH failed to follow the LOCs and CDGs. *Id*. at 23. As these guidelines are not plan terms and indeed, are challenged by Plaintiffs as being inconsistent with the Plans, Plaintiffs argue, they need not make such allegations to state a claim for improper denial of benefits. *Id*. Moreover, they argue, they have adequately alleged improper denial of benefits by alleging that: 1) each Plaintiff was a participant in an ERISA welfare benefits plan, *id*. (citing Complaint ¶¶ 5, 49, 76, 4); 2) that each of the Plans covers treatment for mental illness and substance use disorders so long as it is medically necessary as defined by generally accepted standards of care, *id*. (citing Complaint at ¶¶ 6, 52, 81, 99, 100); 3) UBH developed guidelines that its claims representatives uses to adjudicate claims for benefits for mental heal and substance abuse treatment that are not consistent with generally accepted standards of care or the terms of the Plans, *id*. (citing Complaint ¶¶ 7, 15, 17, 27, 32, 38, 40, 43, 45, 46, 68, 71, 112, 118); 4) that each Plaintiff suffered from a mental illness or substance use disorder for which they sought coverage of outpatient treatment that was medically necessary, *id*. (citing Complaint ¶¶ 56, 57, 84, 87, 89, 103, 105); and 5) UBH "improperly den[ied] outpatient treatment claims that were covered by Plaintiffs' Plans." *Id*. (citing Complaint ¶¶ 18, 141).

Plaintiffs also reject UBH's assertion that Counts Three and Four should be dismissed because they are "entirely contingent" on the other Counts. *Id*. at 24. First, to the extent that UBH's arguments as to Counts One and Two fail, Plaintiffs assert, this argument fails as well. *Id*.

10

Second, Plaintiffs argue that Counts Three and Four are not, in fact, entirely "contingent" on Counts One and Two. *Id.* Plaintiffs argue, by way of example, that "even if the Court were to agree with UBH that its guidelines are completely unreviewable and that they were properly applied to deny Plaintiffs' claims for benefits . . . Plaintiffs could still assert a breach of fiduciary duty claim under ERISA § 502(a)(3) based on UBH's misrepresentations to participants about its guidelines." *Id.* As another example, Plaintiffs assert that they have "alleged that UBH improperly subjected each of them to pre-authorization review in violation of their plans . . . and Plaintiffs Klein and Haffner both allege that UBH improperly denied them continued treatment during the pendency of their appeals." *Id.* at 25 (citing Complaint ¶¶ 55, 65, 82, 88, 101, 108, 113).

## III.   ANALYSIS

### A.   Legal Standard

A complaint may be dismissed for failure to state a claim for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Under Rule 8(d)(2), "a party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R.Civ. P. 8(d)(2). Rule 8(d)(3) permits a party to "state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3).

In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1   valid theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A complaint

2   must "contain either direct or inferential allegations respecting all the material elements necessary

3   to sustain recovery under some viable legal theory."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

4   562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

5   "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a

6   cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550

7   U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further

8   factual enhancement.'"  *Id*. (quoting *Twombly*, 550 U.S. at 557).

9          **B.**    **Whether Plaintiffs State a Claim for Breach of Fiduciary Duty**

10       Under ERISA, "a person is a fiduciary with respect to a plan to the extent . . . he has any

11   discretionary authority or discretionary responsibility in the administration of such plan." 29

12   U.S.C. § 1002(21)(A). "Fiduciary duties under ERISA attach not just to particular persons, but to

13   particular persons performing particular functions."  *Hozier v. Midwest Fasteners, Inc*., 908 F.2d

14   1155 (3d Cir.) (internal quotations and citations omitted);  *see also Mertens v. Hewitt Associates*

15   508 U.S. 248, 262 (1993) ("ERISA . . . defines 'fiduciary' not in terms of formal trusteeship, but

16   in functional terms of control and authority over the plan . . . thus expanding the universe of

17   persons subject to fiduciary duties").  One such function is the adjudication of claims under a

18   covered plan where the decision to grant or deny a claim involves some exercise of discretion.  *IT*

19   *Corp. v. General American Life Ins. Co*., 107 F.3d 1415, 1421-1422 (9th Cir. 1997) (holding that

20   claims administrator could be a fiduciary, as a factual matter, even though the contract between

21   the administrator and the plan sponsor ostensibly did not delegate any discretion to the

22   administrator and expressly stated that the administrator  was *not* a fiduciary, and on that basis

23   reversing the district court's dismissal of plaintiff's claim for breach of fiduciary duty on a Rule

24   12(b)(6) motion.  Similarly, the creation of internal guidelines by a plan administrator typically

25   involves the exercise of discretion and therefore, gives rise to a fiduciary duty.  *See, e.g., Glista v.*

26   *Unum Life Ins. Co. of America*, 378 F.3d 113, 124 (1st Cir. 2004) ("By creating and promulgating

27   internal guidance documents, plan administrators choose to exercise their discretion to define

28   terms");  *Egert v. Comm. Gen. Life Ins. Co*., 900 F.2d 1032, 1036 (7th Cir. 1990) (holding that

1   third-party administrators "cannot adopt *any* guidelines they choose and then rely upon these

2   guidelines with impunity;  rather they may rely only upon those guidelines that reasonably

3   interpret their plans").

4          Plaintiffs have alleged that UBH, as the claims administrator with discretion to adjudicate

5   claims for coverage, has promulgated internal guidelines that it uses to determine whether a

6   claimant seeking mental illness or substance use disorder out-patient treatment is entitled to

7   coverage.  Under the case law discussed above, these allegations are sufficient to show, at least at

8   the pleading stage of the case, that UBH was acting as a fiduciary when it adopted these guidelines

9   and therefore may be liable for a breach of fiduciary duty on the basis of this conduct.

10         The Court rejects UBH's arguments to the contrary, both under *Jones* and the ERISA

11  disclosure cases cited by UBH, *Eden Surgical* and *Teen Help*.  As discussed above, UBH contends

12  that it was acting as a settlor rather than a fiduciary when it adopted the guidelines that are

13  challenged in this case, citing the rule that "[e]mployers or other plan sponsors are generally free

14  under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans. . . .

15  [because] [w]hen employers undertake those actions, they do not act as fiduciaries . . . but are

16  analogous to the settlors of a trust." *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) (internal

17  quotations and citations omitted);  *see also McGath v. Auto-Body North Shore, Inc.*, 7 F.3d 665,

18  670-71 (7th Cir.) ("An employer can wear two hats:  one as a fiduciary administering a pension

19  plan and the other as a drafter of a plan's terms.  Therefore, because the functions are distinct, an

20  employer does not act as a fiduciary when it amends or otherwise sets the terms of a plan");

21  *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155 (3d Cir. 1990) ("Thus, when employers

22  themselves serve as plan administrators, they assume fiduciary status only when and to the extent

23  that they function in their capacity as plan administrators, not when they conduct business that is

24  not regulated by ERISA") (internal quotations and citations omitted).

25         UBH relies heavily on *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1292

26  (10th Cir. 1999), but that case is distinguishable.  In *Jones*, a plan participant sued a welfare

27  benefits plan covered by ERISA for improper denial of benefits relating to inpatient substance

28  abuse treatment.  169 F.3d at 1290.  The claim was denied on the basis of internal criteria created

by the plan administrator . *Id.* The plaintiffs sued the plan, challenging the criteria used by the administrator on the basis that they were arbitrary and capricious; however, the court found on summary judgment that the criteria were "a matter of Plan design and structure, rather than implementation" and therefore, were not subject to judicial review. *Id.* at 1292. In reaching this conclusion, the court acknowledged that the criteria were not included in the Plan Summary but reasoned that requiring disclosure of these "particularized criteria for determining the medical necessity of treatment for individual illnesses" would "frustrate the purpose of a summary." *Id.* The court further found that to the extent that "the Plan Summary expressly authorized [the administrator] to determine eligibility for substance abuse treatment according to its own criteria [ ] [t]he [administrator's] criteria did not need to be listed in Plan documents to be part of the Plan." *Id.*

Here, in contrast to *Jones*, Plaintiffs have sued the administrator of their Plans, not the Plan sponsors. While a plan can act as a settlor, setting the terms of coverage and determining the scope of the plan, it is less clear that a third-party administrator can play that role. As Plaintiffs point out, the Plans at issue in this case do not permit UBH to change their terms through the adoption of internal policies. In particular, the Plans specify that any changes must be made through an official amendment, rider or endorsement executed pursuant to the plan's provisions and no agent has the authority to change the Plans. *Id.* (citing Stalinksi Decl., Ex. A (2013 Alexander Plan) at 00084; *id.*, Ex. D (2011 Haffner Plan); Britto Decl., Ex. E (Klein Plan) at 000085). Thus, *Jones* does not necessarily support the conclusion that UBH was acting as a settlor when it adopted the LOCs and CDGs.

*Jones* also appears to be distinguishable to the extent that the court in that case found that the criteria at issue were expressly incorporated in the plan. Although the *Jones* court does not provide the specific Plan language that it found gave rise to incorporation of the administrator's criteria as plan terms, the Court agrees with Plaintiffs that the language in the Plans at issue here does *not* support the conclusion that the LOCs and CDGs were incorporated into the Plans. Not one of the Plans even refers to UBH's CDGs. Nor does the vague reference to "levels of care" in the Alexander and Haffner Plans suggest any intent to incorporate those guidelines into Plaintiffs'

1    Plans.[3]   The Alexander and Haffner Plans exclude "[s]ervices . . . for the diagnosis or treatment of

2    Mental Illness that, in the reasonable judgment of the Mental Health/Substance Use Disorder

3    Designee, are . . [n]ot consistent with the Mental Health/Substance Use Disorder Designee's level

4    of care guidelines or best practices as modified from time to time."  Stalinski Decl., Ex. A

5    (Alexander 2013 Plan) at 000054;  *id.*, Ex. B (Alexander 2014 Plan) at 000055-000056;  *id.*, Ex. C

6    (Haffner 2014 Plan) at  000069-000070.  The qualification that the exclusion must be based on the

7    "*reasonable* judgment" of the Mental Health/Substance Use Disorder Designee's level of care

8    guidelines appears to recognize that application of these guidelines involve an act of discretion.

9    *See, e.g.,* Egert, 900 F.2d at 1036 (holding that plan administrators cannot adopt "any guidelines

10   they choose and then rely on these guidelines with impunity; rather, they may rely only upon those

11   guidelines that reasonably interpret their plans").  The reference to guidelines that may be changed

12   from "time to time" also supports the conclusion that the LOCs cannot be plan terms because

13   Plaintiffs' Plans have specific requirements governing the amendment of the Plan.

14           Finally, the Court agrees with Plaintiffs that were *Jones* read so broadly as to hold that

15   such open-ended references to guidelines are sufficient, as a matter of law, to convert a fiduciary

16   act on the part of an administrator into an act that is immune from judicial review, the broad

17   protections that have been afforded under ERISA with respect to fiduciary acts would be

18   significantly undermined.   Further, such a result could not be squared with the many cases in

19   which courts have found that the creation of internal guidelines by plan administrators involves an

20   exercise of discretion and therefore constitutes a fiduciary act.  *See*, *e.g*., *Egert v. Conn. Gen. Life

21   Ins. Co.*, 900 F.2d 1032, 1036 (7th Cir. 1990);  *Glista v. Unum Life Ins. Co. of Am.*, 378 F.3d 113,

22   124 (1st Cir. 2004);  *Mullins v. Conn. General Life Ins. Co.*, 880 F. Supp. 2d 713, 719 (E.D. Va.

23   2010).   Therefore, the Court declines to adopt the broad reading of *Jones* advanced by UBH.

24           The Court also rejects UBH's reliance on the fact that the CDGs and LOCs are used to

25   "operate" the Plan and therefore are considered "Plan Documents" that are subject to disclosure

26   under 29 U.S.C. § 1024(b).  Section 1024(b)(4) provides, in part, that "[t]he administrator shall,

27

28   _____

[3]The Klein Plan does not refer to "levels of care."

United States District Court
Northern District of California

United States District Court
Northern District of California

upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." In *Teen Help*, the court addressed whether a plan administrator should have furnished upon written request a copy of utilization review criteria that were used to determine whether requested treatment was medically necessary.  1999 WL 1069756, at * 2.  The court found that it should have because the utilization review criteria were "other instruments under which the plan is established or operated."  *Id*. at *3.  Similarly, in *Eden Surgical*, the court held that § 1024(b)(4) required an administrator to furnish copies of the "internally developed criteria" it used to adjudicate claims.  2010 WL  2180360, at *5-6.  Nothing in either of these cases, however, suggests that the criteria that must be disclosed under section 1024(b)(4) are plan terms.  Nor does the reasoning of those cases suggest that the courts' interpretation of the ERISA disclosure requirements had any implications as to whether administrators were acting as fiduciaries or settlors when adopting such criteria.

In sum, the Court concludes that Plaintiffs' claim for breach of fiduciary duty is sufficiently alleged and therefore denies UBH's request that the Court dismiss Count One on the pleadings.[4]

### C.   Whether Plaintiffs State a Claim for Denial of Benefits or Equitable Relief

UBH's challenge to Plaintiffs' denial of benefits claim (Count Two) is premised on its position that the LOCs and  CDGs are plan terms and therefore, in order to state a claim Plaintiffs must allege that in denying benefits, UBH failed to adhere to these guidelines.  As the Court has

---

[4] As the question of whether an entity is functioning as a fiduciary is a mixed question of law and fact, it is often appropriate to address this question after the factual record has been developed. *See Rosenburg v. International Business Machines Corp.*, Case No. 06-cv-0430 PJH, 2006 WL 1627108, at *5 (N.D. Cal. June 12, 2006) ("Because the court is of the view that whether IBM was wearing its employer or its plan administrator 'hat' is at least in part a factual issue, it cannot be decided as a matter of law at this stage of the litigation and plaintiffs are entitled to discovery on the issue").  Here, it is possible that further development of the record will shed light on the question of whether UBH was acting as a fiduciary when it adopted the CDGs and LOCs. Therefore, UBH will not be precluded from revisiting this question on summary judgment.

declined to adopt the underlying premise, at least at the pleading stage of the case, it also rejects UBH's argument that Plaintiffs' claim for improper denial of benefits fails to state a claim. Similarly, as UBH's challenges to Counts Three and Four are based on its arguments as to Counts One and Two, the Court also rejects UBH's assertion that Plaintiffs fail to state viable claims for equitable relief in those claims.

## IV.     CONCLUSION

For the reasons stated above, the Motion is DENIED.

**IT IS SO ORDERED.**

Dated: April 7, 2015

_____
JOSEPH C. SPERO
United States Magistrate Judge