UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WIT, et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>UNITED BEHAVIORAL HEALTH,<br><br>     Defendant. | Case No. 14-cv-02346-JCS<br>Related Case No. 14-cv-05337 JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART UNITED BEHAVIORAL HEALTH'S MOTION FOR SUMMARY JUDGMENT**<br><br>Docket No. 248 (Case No. 14-cv-2346 JCS)<br>Docket No. 205 (Case No. 14-cv-5337 JCS) |
| GARY ALEXANDER, et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>UNITED BEHAVIORAL HEALTH,<br><br>     Defendant. | |

## I. INTRODUCTION

Plaintiffs in these putative class actions allege that they were improperly denied coverage for mental health and substance use disorder treatment by Defendant United Behavioral Health ("UBH"), which administers mental health and substance use disorder benefits under their health insurance plans. In its September 19, 2016 Order ("Class Certification Order"), the Court certified two classes in *Wit v. United Behavioral Health*, Case No. 14-cv-2346 JCS (hereinafter, "*Wit*"), and one class in *Alexander v. United Behavioral Health*, Case No. 14-cv-5337 JCS (hereinafter, "*Alexander*"). Presently before the Court is UBH's Motion for Summary Judgment ("Motion").

A hearing on the Motion was held on Friday, July 28, 2017 at 9:30 a.m. For the reasons stated below, the Motion is GRANTED in part and DENIED in part.[1]

## II.    BACKGROUND

### A.    Factual Background[2]

UBH administers insurance benefits for behavioral health services, including services for specific diagnosis and treatment of mental health conditions or substance use disorders, for various health benefit plans. Stipulations of Fact (*Wit* Dkt. No. 257; *Alexander* Dkt. No. 214) at 3, ¶¶ 1, 2. In this role, UBH administers Requests for Coverage on behalf of members of ERISA-governed health benefit plans ("Plans"). *Id.* ¶ 3. It is undisputed that at the time of each named Plaintiff's Non-Coverage Determination that gives rise to his or her claims in this action, the Plaintiff's health benefit plan was governed by ERISA. *Id.* ¶ 4. The specific terms and conditions of coverage for mental health and substance use disorder treatment administered by UBH are set forth in the Plan term documents for each Plan, including but not limited to the Certificate of Coverage and/or Summary Plan Description. *Id.* ¶ 5.

The claims of putative class members were denied under thousands of health plans that contained different language describing covered services and exclusions. Class Certification Order at 3. *Id.* The Court has found, however, that the Plans of all of the named Plaintiffs and of the Sample Plaintiffs required "as one (though not the only) condition of coverage that the mental health or substance use disorder treatment at issue must be consistent with generally accepted standards of care." *Id.* at 4. In reaching this conclusion, the Court rejected UBH's reliance on minor variations as to the words and phrases used to describe this standard, finding that UBH did not point to "any evidence that these differences were material." *Id.* at 5.

UBH developed level of care guidelines ("LOCs") and coverage determination guidelines ("CDGs") to help its clinical staff make coverage determinations. Declaration of Jennifer S.

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).
[2] A more detailed description of the relevant facts is contained in the Court's Class Certification Order at 2-8.

Romano in Support of United Behavioral Health's Motion for Summary Judgment ("Romano MSJ Decl."), Ex. 3 (Deposition of Andrew Martorana, M.D. ("Martorana Depo.")) at 76-77. The LOCs are organized by level of care (e.g., inpatient hospitalization, residential treatment, and intensive outpatient and outpatient settings), while the CDGs are organized by diagnosis (e.g., major depressive disorder, ADHD, and substance use). Romano MSJ Decl., Ex. 2 (Declaration of Dr. Lorenzo Triana in Support of Defendant United Behavioral Health's Motion for Summary Judgment ("Triana MSJ Decl.")) ¶¶ 5-6. Both are updated annually. *Id*. All of the CDGs at issue in this case incorporated the LOCs. Romano MSJ Decl., Ex. 3 (Martorana Depo.) at 78. All of the class members' requests for coverage were denied under UBH's CDGs and LOCs.

Plaintiffs contend the LOCs and CDGs (collectively, "Guidelines") fell below generally accepted standards of care in the following respects: 1) "the Guidelines required a showing of acute crisis necessitating the level of care requested, and once the crisis passed, the member was no longer eligible for continued coverage"; 2) "UBH's Level of Care criteria failed to consider co-occurring medical and behavioral conditions as an aggravating factor that could necessitate treatment in a more intensive level of care"; 3) "UBH's Level of Care criteria precluded coverage for services to prevent deterioration or maintain a level of functioning, but rather required an expectation that services would cause a patient to continually progress toward recovery"; and 4) "UBH failed to adopt any level-of-care criteria tailored to the unique needs of children and adolescents." Opposition at 4-6. Defendants contend the CDGs and LOCs are consistent with generally accepted standards of care but do not seek summary judgment on that issue, recognizing that there are factual disputes on that question. *See* Reply at 3.

## B. Plaintiffs' Claims

Plaintiffs assert two claims: 1) breach of fiduciary duty (the "Breach of Fiduciary Duty Claim" or "Claim One"); and 2) arbitrary and capricious denial of benefits ("the Arbitrary and Capricious Denial of Benefits Claim" or "Claim Two"). *See Wit*, Docket No. 39 ("*Wit* Compl.") ¶¶ 198, 210; *Wit* Docket No. 123 ("*Tillitt* Intervenor Compl.") ¶¶ 88, 99 ; *Alexander*, Docket No. 1 ("*Alexander* Compl.) ¶¶ 136, 146; *Alexander* Docket No. 87 ("*Driscoll* Intervenor Compl.") ¶¶ 86, 96. Plaintiffs assert the Breach of Fiduciary Duty Claim under 29 U.S.C. § 1132(a)(1)(B)

(Count I in all of the operative complaints) and, to the extent the injunctive relief Plaintiffs seek is unavailable under that section, they assert the claim under 29 U.S.C. § 1132(a)(3)(A) (Count III in all of the operative complaints). Similarly, Plaintiffs assert the Arbitrary and Capricious Denial of Benefits Claim under 29 U.S.C. § 1132(a)(1)(B) (Count II in all of the operative complaints) and under 29 U.S.C. § 1132(a)(3)(B) (Count IV in all of the operative complaints).

The Breach of Fiduciary Duty Claim is based on the theory that UBH is an ERISA fiduciary under 29 U.S.C. § 1104(a) and therefore owes a duty to discharge its duties "with . . . care, skill, prudence, and diligence" and "solely in the interest of the participants and beneficiaries." According to Plaintiffs, UBH violated this duty by developing guidelines that are far more restrictive than those that are generally accepted even though Plaintiffs' health insurance plans provide for coverage of treatment that is consistent with generally accepted standards of care, and by prioritizing cost savings over members' recovery of benefits. *See Wit* Compl. ¶¶ 198, 99; *Tillitt* Intervenor Compl. ¶¶ 88,89; *Alexander* Compl. ¶¶ 136,37; *Driscoll* Intervenor Compl. ¶¶ 86, 87. Plaintiffs contend they "have been harmed by UBH's breaches of fiduciary duty because their claims have been subjected to UBH's restrictive guidelines making it less likely that UBH will determine that their claims are covered." *Wit* Compl. ¶ 201; *see also Alexander* Compl. ¶ 137 (alleging that "[b]y promulgating improperly restrictive guidelines, UBH artificially decreases the number and value of covered claims, thereby benefiting its corporate affiliates at the expense of insureds."); *Tillitt* Intervenor Compl. ¶¶ 89, 90 (alleging that "[b]y promulgating improperly restrictive guidelines, UBH artificially decreases the number and value of covered claims, thereby benefiting its corporate affiliates at the expense of insureds" and that "Ms. Tillitt and the members of the Class have been harmed by UBH's breaches of fiduciary duty because their claims have been subjected to UBH's restrictive guidelines, making it less likely that UBH will determine that their claims are covered").

The Arbitrary and Capricious Denial of Benefits Claim is based on the theory that UBH improperly adjudicated and denied Plaintiffs' requests for coverage by, *inter alia*, relying on the overly restrictive Guidelines. *Wit* Compl. ¶ 205 ; *Tillitt* Intervenor Compl. ¶ 94; *Alexander* Compl. ¶¶ 141-142; *Driscoll* Intervenor Compl. ¶ 91. The reliance on these Guidelines was

arbitrary and capricious, Plaintiffs allege, because: 1) Plaintiffs' health insurance plans provided for coverage consistent with generally accepted standards of care; and 2) some of Plaintiffs' health insurance plans were subject to state laws that explicitly mandate the use of clinical criteria issued by the American Society of Addiction Medicine ("ASAM") or the Texas Department of Insurance ("TDI"). *See Wit* Compl. ¶ 14.

Plaintiffs seek declaratory and injunctive relief as a remedy for UBH's alleged ERISA violations. In particular, in connection with Claim One they ask for: 1) a declaration that UBH's Guidelines were developed in violation of its fiduciary duties; and 2) an injunction ordering UBH to stop utilizing the Guidelines and instead adopt or develop guidelines that are consistent with those that are generally accepted and with the requirements of applicable state law. In connection with Claim Two, the Arbitrary and Capricious Denial of Benefits Claim, Plaintiffs ask the Court: 1) to declare that UBH's denial of benefits was improper; 2) to order UBH to reprocess claims for residential treatment, intensive outpatient treatment and outpatient treatment that were denied, in whole or in part, pursuant to the Guidelines, using the new guidelines; and 3) to order UBH to apply the new guidelines in processing all future claims. *See Wit* Compl. at 65-66; *Alexander* Compl. at 50-51.

Plaintiffs also ask the Court to impose a surcharge on UBH as an equitable remedy, under either Counts I and II or Count IV. *See Wit* Compl. at 66; *Alexander* Compl. at 51. In the Complaints, Plaintiffs sought a surcharge in an amount "equivalent to the revenue [UBH] generated from its corporate affiliates or the plans for providing mental health and substance abuse-related claims administration services with respect to claims filed by Plaintiffs and members of the Class, expenses that UBH's corporate affiliates saved due to UBH's wrongful denials, the out-of-pocket costs for . . . treatment Plaintiffs and members of the Class incurred following UBH's wrongful denials, and/or pre-judgment interest." At Class Certification, however, Plaintiffs stipulated that they would proceed "only under the theory that they are entitled to disgorgement of the revenue UBH generated from its corporate affiliates or the plans for providing mental health and substance abuse-related claims administration services in connection with processing of the class members' claims." Class Certification Order at 11-12.

Finally, Plaintiffs seek an award of attorneys' fees. *Id*.

**C.     Classes Certification**

At the class certification stage of the case, Plaintiffs asked the Court to certify three

proposed classes under Rule 23(b)(2) and (b)(3).  UBH argued that the proposed classes should

not be certified because, *inter alia*, Plaintiffs' claims turned on individualized issues of medical

necessity, and therefore, Rule 23(b)'s commonality requirement was not met.  *See* Case No. 14-

2346, Dkt. No. 149 at 20-21.  Plaintiffs rejected that argument in their class certification reply

brief, stating as follows:

> UBH's arguments regarding "individualized issues of medical necessity" also fail.  . . .  As a threshold matter, UBH does not (and cannot) argue that Class members' individual clinical presentation is relevant to Claim One. Because that claim is focused on UBH's development of the Guidelines, all of the factual and legal questions on which the claim turns will relate solely to the validity of those guidelines.
>
> Individual circumstances are equally irrelevant to Claim Two. . . . Plaintiffs are *not* asking this Court to determine whether Class members were owed benefits or whether UBH should be ordered to cause its plans to pay such benefits. Rather, Plaintiffs seek a reprocessing remedy, which stems directly from their allegation that UBH used an arbitrary process, premised on fatally flawed Guidelines, to deny their requests for coverage. For that reason, Plaintiffs need not prove at trial that UBH reached the wrong outcome in every single one of its coverage determinations.

Case No. 14-2346, Dkt. No. 153 at 5 (emphasis in original).

Similarly, at oral argument, Plaintiffs explained the theories that underpin their claims and

asserted that the remedy they seek flows from those theories, stating as follows:

> So we have two claims in the case. We have a breach of fiduciary duty claim that's all about how UBH created its guidelines, the process it followed. Our assertion is that UBH breached fiduciary duties that it owes to all class members by undertaking to create guidelines for administering these plans that were consistent with generally accepted standards, but failing to do so in violation of its duties of care, prudence, skill, and loyalty.
>
> And we also have a claim for arbitrary and capricious denial of benefits, and that's a process claim. It's about the fact that UBH used criteria that were inconsistent with the terms of the members' plans, and that's what made them arbitrary and capricious. It's a different – slightly different issue for the State Mandate Class. The denials were arbitrary and capricious, and, under ERISA, claims administrators are not allowed to make arbitrary and capricious

> decisions, and so the use of those criteria injured the class members all in the same way.
>
> And the relief that we're seeking really follows from those claims. So our claims are that UBH created bad guidelines and then used them to administer claims. And so we're seeking a declaration from the Court that the guidelines were inconsistent with generally accepted standards, an injunction requiring UBH to go back to the drawing board, do it again, and come up with guidelines that are consistent with generally accepted standards, to use those guidelines going forward, and then, most importantly, to reprocess the claims that it denied pursuant to the bad guidelines. And that is real and substantive and very important relief for the class.

Dkt. No. 173 (September 7, 2016 Hearing Transcript) at 13-14.

In response to a question by the Court, Plaintiffs acknowledged that the operative complaints include additional theories that would require individualized inquiries as to why UBH's denials of the named Plaintiffs' claims for benefits were wrongful. *Id*. at 4, 7. Plaintiffs stipulated, however, that "if the case is certified as a class case, those individualized additional reasons for why their denials were wrong would not be part of this case." *Id*. at 8. Plaintiffs further stipulated that "while it might be possible in an individual case for a surcharge to be made-whole relief, that's not the measure that we're seeking on behalf of the class. And assuming the class is certified, the individual plaintiffs would not be seeking that – would not be seeking make-whole relief as a surcharge." *Id*.

In its Class Certification Order, the Court relied on Plaintiffs' characterization of their claims and requested remedy in support of its conclusion that the commonality requirement of Rule 23(b)(1) was satisfied, reasoning as follows:

> The Court is not persuaded by Defendant's assertions that variations relating to the putative class members' insurances plans, medical necessity determinations or the Guidelines themselves defeat commonality. These variations are not material to the theories upon which Plaintiffs' claims are based. The harm alleged by Plaintiffs – the promulgation and application of defective guidelines to the putative class members – is common to all of the putative class members. Similarly, whether Plaintiffs are entitled to the requested remedy – adoption of new Guidelines that are consistent with generally accepted standards and/or state law and reprocessing of claims that were denied under the allegedly defective guidelines– can be addressed on a common basis. Of particular significance is the fact that Plaintiffs do not ask the Court to make determinations as to whether class members were actually entitled to benefits (which would require the Court to consider a multitude of

> individualized circumstances relating to the medical necessity for coverage and the specific terms of the member's plan). Instead, Plaintiffs seek only an order that UBH develop guidelines that are consistent with generally accepted standards and reprocess claims for coverage that were denied under the allegedly faulty guidelines.

Class Certification Order at 30-31. The Court also highlighted Plaintiff's stipulation to drop their request for a surcharge that would afford "make-whole relief" to the class members, finding that "[w]ith that modification, the surcharge that Plaintiffs request is based only on the amount UBH was paid to process the claims that were denied." *Id*. at 43.

The Court granted Plaintiffs' class certification motion on September 19, 2016. UBH filed a motion for leave to file a motion for reconsideration on September 30, 2016, which the Court denied on October 12, 2016.

The Court has certified the following classes under Rule 23(b)(2) and (b)(3)[3]:

> **The *Wit* Guideline Class**
> Any member of a health benefit plan governed by ERISA whose request for coverage of residential treatment services for a mental illness or substance use disorder was denied by UBH, in whole or in part, between May 22, 2011 and June 1, 2017, based upon UBH's Level of Care Guidelines or UBH's Coverage Determination Guidelines.

> **The *Wit* State Mandate Class**
> Any member of a fully-insured health benefit plan governed by both ERISA and the state law of Connecticut, Illinois, Rhode Island, or Texas, whose request for coverage of residential treatment services for a substance use disorder was denied by UBH, in whole or in part, within the Class period, based upon UBH's Level of Care Guidelines or UBH's Coverage Determination Guidelines, and not upon the level-of-care criteria mandated by the applicable state law.

> With respect to plans governed by Texas law, the Wit State Mandate Class includes only denials of requests for coverage of substance use disorder services that were sought or received in Texas.

> The Class period for the Wit State Mandate Class includes denials governed by Texas law that occurred between May 22, 2011 and June 1, 2017, denials governed by Illinois law that occurred between August 18, 2011 and June 1, 2017, denials governed by

---

[3] Since the Court granted Plaintiffs' class certification motion, the parties have entered into stipulations making minor modifications to the class definitions. The class definitions quoted above are the current versions of these definitions.

8

Connecticut law that occurred between October 1, 2013 and June 1, 2017, and denials governed by Rhode Island law that occurred between July 10, 2015 and June 1, 2017.

**The *Alexander* Guideline Class**
Any member of a health benefit plan governed by ERISA whose request for coverage of outpatient or intensive outpatient services for a mental illness or substance use disorder was denied by UBH, in whole or in part, between December 4, 2011 and June 1, 2017, based upon UBH's Level of Care Guidelines or UBH's Coverage Determination Guidelines.

The Alexander Guideline Class excludes any member of a fully insured plan governed by both ERISA and the state law of Connecticut, Illinois, Rhode Island or Texas, whose request for coverage of intensive outpatient treatment or outpatient treatment [was][4] related to a substance use disorder, except that the Alexander Guideline Class includes members of plans governed by the state law of Texas who were denied coverage of substance use disorder services sought or provided outside of Texas.

Class Certification Order at 12-13; Stipulation and Order Regarding Amendment of Date Limitation of *Alexander* Guideline Class Definition, Case No. 14-2346, Dkt. No. 256; Order Regarding Supplemental Class Notice, Case No. 14-2346, Dkt. No. 281.

### D. Summary Judgment Motion

In its summary judgment motion, UBH asks the Court to dismiss both of Plaintiffs' claims on the basis that Plaintiffs cannot demonstrate that any concrete injury was actually caused by the alleged violations of ERISA. Motion at 10-16. It further contends the claims of certain named Plaintiffs (and likely those of "thousands of class members" as well) fail because their insurance plans expressly exclude coverage for services that are not consistent with the UBH LOCs. *Id.* at 16-18. In addition, UBH contends it is entitled to summary judgment as to the claims of the *Wit* State Mandate Class asserted on the basis of Texas state law because the undisputed evidence shows that "it has been UBH's policy and practice to apply TDI guidelines – not UBH guidelines – to coverage decisions for plans subject to Texas law for the entire class period." *Id.* at 18.

UBH also challenges the surcharge remedy Plaintiffs seek. *Id.* at 18-22. In particular,

---

[4] At oral argument, the parties stipulated that the *Alexander* Guidelines Class definition proposed by Plaintiffs at class certification and adopted by the Court in its Class Certification Order was grammatically incorrect as a verb was inadvertently omitted from the second sentence of the definition. The Court corrects that error here and will use the corrected version of the class definition going forward.

UBH contends the proposed surcharge is not available under traditional equitable principles and is not appropriately tailored to redress a loss flowing from the alleged breach or prevent unjust enrichment. *Id*.

## III.   ANALYSIS

### A.   General Legal Standards Under Rule 56

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial." *Id***.**  On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### B.   Legal Framework Under ERISA

"ERISA protects employee pensions and other benefits by providing insurance . . . , specifying certain plan characteristics in detail . . . , and by setting forth certain general fiduciary duties applicable to the management of both pension and nonpension benefit plans." *Varity Corp. v. Howe*, 516 U.S. 489, 496 (1996)).   The basic purpose of ERISA is "to protect . . . the interests of participants . . . and . . . beneficiaries . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries . . . and . . . providing for appropriate remedies . . . and ready access to the Federal courts." *Id*. at 513 (quoting ERISA § 2(b), 29 U.S.C. § 1001(b)).

An ERISA fiduciary must act for the exclusive benefit of plan participants and must exhibit the care, skill, prudence, and diligence that a prudent person acting in like capacity would use in similar circumstances.  29 U.S.C. § 1104(a)(1).  Further, a fiduciary must discharge its duties with complete and undivided loyalty to plan participants without any dealing for the fiduciary's own benefit. 29 U.S.C. § 1104(a)(1)(A);  *see Kanawi v. Bechtel Corp.*, 590 F. Supp. 2d

1213, 1222 (N.D. Cal. 2008). Under ERISA, "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries [under ERISA] shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." 29 U.S.C. § 1109.

In addition, Section 502 of ERISA allows plan participants or beneficiaries to bring a civil action and sets forth certain remedies available to them. 29 U.S.C. § 1132. In particular, Section 502(a) provides, in relevant part, as follows:

> A civil action may be brought–
>
> (1) by a participant or beneficiary–
>
> . . .
>
>  (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
> . . .
>
>  (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

ERISA § 502(a)(1) & (3), 29 U.S.C. § 1132(a)(1) & (3).

## C. Causation and Standing

### 1. Background

In the Motion, UBH asserts Plaintiffs' claims must fail in light of their stipulation at the class certification stage of the case that they are not asking the Court to determine whether any class member was actually entitled to benefits. Motion at 7. According to UBH, Plaintiffs "reformulate[ed]" their claims to facilitate class treatment but in doing so, "doom[ed] their claims on the merits" because they "eschew[ed] any attempt to prove injury or causation." *Id.* at 1. UBH argues that Plaintiffs cannot prevail on their claims simply by proving that UBH's guidelines were

11

"bad"; rather, Plaintiffs must also establish that the guidelines caused them actual injury –

something UBH contends is impossible under the theories Plaintiffs have espoused in support of

their claims. *Id*. at 1.

With respect to the Breach of Fiduciary Duty Claim (Claim One), UBH contends Plaintiffs

must demonstrate a "causal link between the alleged breach of fiduciary duty and actual harm

suffered by Plaintiffs and the class members." Motion at 10 (citing *Romberio v. Unumprovident

Corp*., 385 F. App'x 423, 429 (6th Cir. 2009)). UBH argues that Plaintiffs cannot meet this

burden because they have "affirmatively admitted that they will not offer evidence to prove that

each (or any) class member was denied benefits because of the specific flaws they identify in the

guidelines." *Id*. UBH cites *Hein v. F.D.I.C*., 88 F.3d 210, 224 (3d Cir. 1996) in support of its

position. *Id*. at 11. According to UBH, in that case, "[t]he Third Circuit rejected the plaintiff's

breach of fiduciary duty claims because, among other things, he failed to allege facts establishing

that the purported breach of duty caused the denial of benefits." *Id*. UBH also cites *Sedlack v.

Braswell Servs. Grp., Inc.*, 134 F.3d 219, 225 (4th Cir. 1998) and *Graddy v. Blue Cross BlueShield

of Tenn., Inc*., No. 4:09-CV-84, 2010 WL 670081, at \*8 (E.D. Tenn. Feb. 19, 2010) in support of

the proposition that "a plaintiff asserting a claim for breach of fiduciary duty under ERISA must

show that the defendant's breach of fiduciary duty caused the plaintiff harm." *Id*.

Similarly, UBH argues that the Arbitrary and Capricious Denial of Benefits Claim (Claim

Two) fails because a required element of such a claim is the wrongful denial of benefits, which

cannot be satisfied on the basis of a "classwide 'procedural challenge' to the development

and use of allegedly improper coverage guidelines, untethered from any specific benefit decision."

*Id*. at 12 (citing *Payne v. POMCO Grp*., No. 10 CIV. 7285 (BSJ), 2011 WL 4576545, at \*2

(S.D.N.Y. Sept. 30, 2011); *Abatie v. Alta Health & Life Ins. Co*., 458 F.3d 955, 977 (9th Cir.

2006) (Kleinfeld, J., concurring); *Carrier v. Aetna Life Ins. Co*., 116 F. Supp. 3d 1067, 1079 (C.D.

Cal. 2015); *Biba v. Wells Fargo & Co*., No. C 09-3249 MEJ, 2010 WL 4942559, at \*7 (N.D. Cal.

Nov. 10, 2010); *Romberio*, 385 F. App'x at 429 (citing *Hein*, 88 F.3d at 224); *Sedlack*, 134 F.3d at

225).

UBH rejects Plaintiffs' reliance on *Saffle v. Sierra Pacific Power Company Bargaining*

*Unit Long Term Disability Income Plan*, 85 F.3d 455 (9th Cir. 1996) in support of Plaintiffs'

position that "because the remedy they seek is 'reprocessing' of benefit claims, and not payment

of benefits" they "do not need to prove causation." *Id*. at 13. UBH argues that *Saffle* is

distinguishable because the case was not a class action and "[t]he plaintiff offered actual evidence

demonstrating that the plan administrator's arbitrary interpretation of the term 'total disability'

impacted the plan's decision to deny the plaintiff benefits." *Id*. (citing 85 F.3d at 458).

Finally, UBH argues that Plaintiffs lack standing under Article III of the Constitution

because they cannot demonstrate that they have suffered an "injury in fact" or that any injury they

suffered was "fairly traceable" to the conduct that is alleged to be wrongful, namely, the

development and application of the UBH guidelines. *Id*. at 14 (citing *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 560 (1992)). According to UBH, in the class action context, these standing

requirements apply fully to named plaintiffs in the case, who "must have standing to bring claims

on behalf of the class under all legal theories giving rise to the claims." *Id*. (citing *Allee v.*

*Medrano*, 416 U.S. 802, 828-29 (1974)).

With respect to the "injury in fact" requirement, UBH argues that Plaintiffs must

demonstrate that they have suffered a "concrete and particularized" injury that is "actual or

imminent, not conjectural or hypothetical." *Id*. at 15 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct.

1540, 1548-49 (2016)). UBH argues that this requirement is not met because Plaintiffs claim only

"abstract violations of the law without specifying what actual, concrete harm this conduct caused."

*Id*. According to UBH, Plaintiffs identify merely "the possibility of injury," which is the sort of

conjectural or hypothetical injury the Supreme Court has found to be inadequate to confer

standing. *Id*. at 15-16. "It is not enough," UBH contends, "to speculate that some class members,

or some Plaintiffs, may receive additional benefits through reprocessing if it turns out that their

earlier denials were caused by the conduct challenged in this case." *Id*. at 16. Rather, UBH

asserts, "Plaintiffs must prove that now, or fail for lack of standing." *Id*.

UBH argues further that to the extent Plaintiffs do not intend to prove a causal link

between the Guidelines and any particular denial of benefits, Plaintiffs cannot establish that they

have suffered an injury that is "fairly traceable" to UBH's allegedly wrongful conduct. *Id*.

Plaintiffs reject UBH's challenges regarding causation and standing and in particular, its assertion that Plaintiffs must demonstrate that they would have received benefits if UBH had applied valid guidelines. Opposition at 10-19. As a preliminary matter, they argue that UBH's arguments are merely a "rehash of the same arguments UBH has already made, and this Court has rejected, several times." *Id*. at 10. They point to the fact that when the Court certified the proposed classes it recognized that Plaintiffs' claims were based on "an injury that is distinct from the actual denial of benefits and that is cognizable under ERISA, namely, the use of Guidelines that are more restrictive than the plans under which they are insured or the standards mandated by state law in adjudicating their claims." *Id*. (quoting Class Certification Order at 49). The Court also rejected the same causation argument when UBH asked it to reconsider its Class Certification Order, Plaintiffs contend. *Id*. Therefore, they argue, under the "law of the case" doctrine, the Court should reject UBH's arguments here on the basis that these questions have already been decided. *Id*. at 11 (citing *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997)).

Similarly, Plaintiffs argue that all of the arguments raised by UBH are "thinly disguised decertification motions." *Id*. at 11-12. Plaintiffs point out that the Court instructed UBH that it would not be permitted to bring a motion for decertification without seeking leave and that UBH did not do so. *Id*. at 11 (citing Reynolds Decl., Ex. 68 (Transcript of February 3, 2017 hearing) at 41). Thus, Plaintiffs contend, the instant motion is an improper attempt to evade the Court's order. *Id*. at 12.

On the merits, Plaintiffs assert that UBH's causation and standing arguments are an attempt to improperly "add an element" to Plaintiffs' claims, requiring them to show not only that UBH applied the wrong standards but also that Plaintiffs would have been entitled to benefits if UBH had applied the *correct* standard. *Id*. at 12. That is not the law, Plaintiffs assert. *Id*. (citing Class Certification Order at 31-35; Order Granting Mot. for Class Cert., *Des Roches v. Cal. Phys.' Serv*., Case No. 16-CV-02848-LHK, Dkt. No. 123, at 12-14 (N.D. Cal. June 15, 2017) (Koh, J.)). Neither is such a showing necessary to establish Article III standing, Plaintiffs contend. *Id*.

With respect to Claim One, Plaintiffs assert that UBH's development and application of its Guidelines breached the following fiduciary duties to Plaintiffs: 1) the duty of due care (29 U.S.C.

14

§ 1104(a)(1)(B); 2) the duty of loyalty (29 U.S.C. § 1104(a)(1)(A); and 3) the duty to comply with plan terms (29 U.S.C. § 1104(a)(1)(D)). *Id*. at 13. According to Plaintiffs, UBH's assertion that they cannot establish causation as to Claim One fails for three reasons. *Id*.

First, Plaintiffs assert, the express terms of ERISA contradict UBH's position to the extent that ERISA "provides that '[a] civil action may be brought' by a plan participant or beneficiary not only to 'recover benefits due . . . under the terms of [a] plan,' 29 U.S.C. §§ 1132(a)(1)(B), but also to 'enforce . . . rights under the terms of [a] plan,' *id*., to 'clarify . . . rights to future benefits under the terms of [a] plan,' *id*., to 'enjoin any act or practice which violates any provision of this subchapter,' *id*. § 1132(a)(3)(A), and to 'obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan,' *id*. § 1132(a)(3)(B)." *Id*. Moreover, Plaintiffs assert, ERISA contains no provision that requires that a plaintiff who brings a breach of fiduciary duty claim must show that the breach caused the plaintiff to lose benefits to which he or she otherwise would have been entitled. *Id*.

Second, Plaintiffs argue, UBH's position "makes no sense" in light of the remedy Plaintiffs seek, which does not include payment of benefits. *Id*. Furthermore, UBH's assertion that Plaintiffs must show that the breach of fiduciary duty caused a denial of benefits is inconsistent with *Shaver v. Operating Eng'rs Local 428 Pension Trust Fund*, 332 F.3d 1198, 1203 (9th Cir. 2003), in which the Ninth Circuit noted that "Congress intended to make fiduciaries culpable for certain ERISA violations even in the absence of actual injury to a plan or participant." *Id*. Thus, Plaintiffs contend, in that case the court held that "although the plaintiffs, who alleged a breach of fiduciary duty, 'did not allege that any loss occurred,' that 'is not fatal' because '[t]he question of whether a fiduciary violated his fiduciary duty is independent from the question of loss')." *Id*. at 14.

Third, Plaintiffs argue that the case authority does not support UBH's causation argument and that its reliance on *Hein v. F.D.I.C.*, 88 F.3d 210 (3d Cir. 1996), and *Romberio v. Unumprovident Corp.*, 385 F. App'x 423 (6th Cir. 2009) is misplaced. *Id*. at 14. According to Plaintiffs, *Hein* is distinguishable because in that case it was undisputed that the denial of pension benefits was consistent with the terms of the plan and the only benefits the plaintiff claimed on the

15

breach of fiduciary duty claim were damages equal to the denied benefits. *Id*. Plaintiffs further contend *Rombiero* is not on point, because it was a class certification decision and the plaintiffs in that case challenged a "plethora of 'loosely-defined practices that were *not* applied uniformly.'" *Id*. (quoting 385 Fed. App'x at 430). In contrast to this case, where "UBH has applied its Guidelines to every member of the class, in *Rombiero* there was no way to know which class members had been subjected to which of the challenged 'practices.'" *Id*.

Plaintiffs also argue that UBH's causation argument fails as to the Breach of Fiduciary Duty Claim. *Id*. at 15. On that claim, Plaintiffs contend, they have sufficiently demonstrated causation because they rely not only on the application of overly restrictive guidelines to their disability determinations but also, the fact that the Guidelines were used to deny coverage to the class members. *Id*. According to Plaintiffs, UBH's argument that causation can only be established by showing that class members would have been awarded benefits but for the flawed guidelines has no basis in ERISA. *Id*. (citing 29 U.S.C. §§ 1132(a)(1)(B), (a)(3)). To the contrary, they argue, the Ninth Circuit's decision in *Saffle* establishes that "[i]nsofar as ERISA requires causation, it is satisfied by showing that the administrator adopted 'a wrong standard,' the administrator 'applied' it to the member's claim, and the claim was denied." *Id*. (quoting 85 F.3d at 460-61).

Plaintiffs reject UBH's attempt to distinguish *Saffle* on the basis that Plaintiffs have not shown that UBH's flawed Guidelines "impacted" the denials. *Id*. Rather, Plaintiffs contend, there is "ample evidence that the flaws in the Guidelines were fundamental, and that those flaws infected UBH's denials of Plaintiffs' requests for coverage." *Id*. at 15-16.[5] Plaintiffs also argue

---

[5] In Section II(D) of Plaintiffs' Opposition brief, Plaintiffs describe the specific reasons provided by UBH for denying benefits to the named Plaintiffs to illustrate how the denials were linked to the alleged flaws in the Guidelines. Because the discussion of UBH's denials of benefits in this section reveals the personal medical history of the named Plaintiffs, this information has been redacted from the publicly-filed version of Plaintiffs' brief. The Court does not rely on the evidence cited by Plaintiffs in this section of their brief to decide the instant motion and therefore does not summarize it here. For the same reason, the Court need not reach UBH's objections to Plaintiffs' reliance on coverage decision letters and clinical case notes in support of this argument. *See* Reply at 2 (objecting to Reynolds Decl., Exs. 28-49, 57, 58). Similarly, the Court does not rely on the expert opinions offered by Plaintiffs on the alleged flaws in the UBH guidelines and therefore does not reach UBH's objection to those reports. *See* Reply at 2 (objecting to Reynolds

that UBH has pointed to no case that holds that a denial of benefits claim can only be successful where the plaintiff demonstrates that benefits would have been awarded but for the flawed guideline. *Id*. at 16. If there *were* such a rule, Plaintiffs contend, remand for reprocessing – which is the "default rule" – would never be a proper remedy. *Id*.

Finally, Plaintiffs argue that they have Article III standing to assert their claims because they have suffered injury-in-fact, their injury is fairly traceable to the challenged conduct, and their injury is likely to be redressed by a favorable judicial decision. *Id*. at 16-19. First, with respect to the Breach of Fiduciary Duty Claim, Plaintiffs contend the injury for which they seek redress – the development, adoption and application of improper guidelines – is cognizable under Article III. *Id*. at 17 (citing *Slack v. Int'l Union of Operating Eng'rs*, 2014 WL 4090383, at *12 (N.D. Cal. Aug. 19, 2014); *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1116 (9th Cir. 2014)). Plaintiffs contend UBH's argument that such an injury is not cognizable is contradicted by *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656 (1993). *Id*. In that case, an association of contractors challenged a city ordinance that gave preferential treatment to minority-owned businesses. According to Plaintiffs, the Court rejected the city's argument that the association lacked standing because it could not show that "one of its members would have received a contract absent the ordinance," finding instead that the "injury in fact" was "the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Id*. (quoting 508 U.S. at 658).

Plaintiffs also argue that the Supreme Court's decision in *Spokeo* is not to the contrary. *Id*. at 18. *Spokeo* instructs that in determining whether an intangible harm provides a basis for standing, courts should consider "whether [the] alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S.Ct. at 1549. Here, according to Plaintiffs, the harm at issue is grounded in well-established principles of trust law. Opposition at 18. In particular, Plaintiffs argue, "it has long been settled that a trust beneficiary may sue in equity to enforce the terms of a

Decl., Exs. 50-55).

17

United States District Court
Northern District of California

trust, without showing that the trustee's departure from the trust's terms diminished the value of the beneficiary's interest." *Id.* (citing Restatement (Third) of Trusts § 71 cmt. a (2007) ("[A]s a protection against harm that might be caused by a breach of trust resulting from a mistake concerning the trustee's powers and duties, a beneficiary may petition to the court to instruct the trustee with regard to the powers and duties of the trusteeship."); *id.* § 94 cmt b ("A suit to enforce a private trust ordinarily . . . may be maintained by any beneficiary whose rights are or may be adversely affected by the matter(s) at issue.")). Plaintiffs also note that *Spokeo* was decided "on the heels of *Cigna Corp. v. Amara*, 563 U.S. 421 (2011), which made clear that, in the ERISA context, insofar as a 'specific remedy' requires showing 'harm,' '[t]hat actual harm may . . . come from the loss of a right protected by ERISA or its trust-law antecedents.'" *Id.* (quoting 563 U.S. at 444).

As to Claim Two, Plaintiffs argue that the injury alleged – the arbitrary and capricious denial of benefits – "clearly satisfies Article III's requirements" because Plaintiffs' claims were, in fact, denied. *Id.* at 19. Plaintiffs reject UBH's assertion that this injury will not be "'established' until 'after reprocessing is complete,'" *id.* (quoting Motion at 15), arguing that UBH's argument has "no basis in fact or law." *Id.* Further, even if some of Plaintiffs' claims for benefits may be denied for different reasons, this result does not negate Article III standing. *Id.* (citing *Akins*, 524 U.S. at 25 ("If a reviewing court agrees that the agency misinterpreted the law, it will set aside the agency's action and remand the case – even though the agency (like a new jury after a mistrial) might later, in the exercise of its lawful discretion, reach the same result for a different reason.")).

### 2. Discussion

#### a. Whether the Court Should Consider Defendants' Arguments on the Merits

As a preliminary matter, the Court declines Plaintiffs' invitation to deny the Motion on the basis that it is simply a motion to decertify in disguise. It is true that many of UBH's arguments regarding causation and standing are closely related to arguments that they made at the class certification stage of the case. Nonetheless, the ultimate question addressed in the Class Certification Order was whether Plaintiffs' claims were amenable to class treatment under Rule 23 when considered in light of Plaintiffs' theories of the case. While the Court also addressed the

legal underpinnings of Plaintiffs' theories, it did not directly consider the question of whether Plaintiffs could prevail on their claims under those theories or whether there was sufficient evidence to give rise to material disputes of fact under those theories. Therefore, the Court does not find the instant motion to be in violation of the Court's orders governing the filing of a decertification motion or the "law of the case" doctrine.

            b.   Whether Plaintiffs Can Establish Causation and Article III Standing on their Claims

The underlying premise of UBH's causation and standing arguments is that in order for Plaintiffs' claims to be actionable Plaintiffs must demonstrate that they were denied benefits as a result of the allegedly flawed Guidelines, that is, that they would have been awarded benefits but for the application of flawed Guidelines. The Court rejects UBH's narrow reading of the case law governing ERISA and standing, which does not limit the types of injuries that may be actionable to the denial of benefits, and therefore also rejects UBH's causation arguments.[6]

            i.   Causation of Injury

Plaintiffs in this action have stipulated that they do not seek to show in this action that the alleged flaws in UBH's Guidelines were the "but-for" cause of the denial of their benefits. Consequently, if denial of benefits were the only injury recognized under ERISA, Plaintiffs' claims would fail for lack of causation. The Court concludes, however, that as to both the Breach of Fiduciary Duty Claim and the Arbitrary and Capricious Denial of Benefits Claim, Plaintiffs rely on a different type of injury and that their theories of liability are in line with the plain language of ERISA and existing case law.

First, whether an ERISA claim is styled as a breach of fiduciary duty claim or a denial of benefits claim, the plain language of ERISA supports the conclusion that a denial of benefits is not

---

[6] The Court notes that to the extent that the surcharge remedy requested by Plaintiffs raises difficult questions regarding causation and standing, the Court need not decide those questions because, as discussed below, it finds that under the specific circumstances of this case that Plaintiffs have not demonstrated that they will be able to establish the amount of the surcharge under the theory on which they sought class certification, which is the only theory the Court will permit Plaintiffs to pursue. Consequently, the only remedy as to which Plaintiffs must establish causation and standing is the injunctive relief related to the development of new Guidelines and reprocessing of denied claims.

the only sort of injury that is actionable. ERISA permits a participant to bring an action not only to recover "benefits due" under the plan but also to "enforce [a participant's] rights under the terms of the plan, or to clarify [a participant's] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). It further permits a participant to bring an action to "enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). This broad remedial provision does not support UBH's position that Plaintiffs must demonstrate they were actually denied benefits as a result of the alleged flaws in the Guidelines in order to demonstrate causation on their claims.

Second, the case law interpreting these provisions also does not support UBH's causation argument. With respect to claims for breach of fiduciary duty, the Ninth Circuit has found that "Congress intended to make fiduciaries culpable for certain ERISA violations even in the absence of actual injury to a plan or participant." *Ziegler v. Connecticut Gen. Life Ins. Co.*, 916 F.2d 548, 551 (9th Cir.1990); *see also Shaver v. Operating Engineers Local 428 Pension Trust Fund*, 332 F.3d 1198, 1203 (9th Cir. 2003) ("The question of whether a fiduciary violated his fiduciary duty is independent from the question of loss."). Under this authority, it is clear that breach of fiduciary duty claims brought by Plan participants or beneficiaries under Section 1132(a) are not limited to those in which the injury alleged is the actual denial of benefits and therefore, that such a claim does not necessarily require that the breach caused a denial of benefits.

In *Shaver*, for example, the plaintiffs alleged that the trustees of an ERISA plan had breached their fiduciary duty by failing to keep adequate records and sought an injunction requiring that the trustees keep better records in the future or that the trustees be removed. 332 F.3d at 1202. The plaintiffs did not allege any loss. *Id*. at 1203. The court rejected a challenge to the claim under Rule 12(b)(6), explaining that the plaintiffs were not required to show a loss because they were "seeking purely equitable relief, either to enjoin future misconduct, or to have the trustees removed." *Id*. It reasoned that "[r]equiring a showing of loss in such a case would be to say that the fiduciaries are free to ignore their duties so long as they do no tangible harm, and

that the beneficiaries are powerless to rein in the fiduciaries' imprudent behavior until some actual damage has been done." *Id*. The court found that "[t]his result is not supported by the language of ERISA, the common law, or common sense." *Id*. The Court concludes that *Shaver* is on point, at least insofar as Plaintiffs seek injunctive relief requiring UBH to rewrite its Guidelines to conform with generally accepted standards or, as to the State Mandate Class, to require UBH to use the applicable State law guidelines in making coverage decisions. Under *Shaver*, Plaintiffs may bring an action to enforce UBH's fiduciary obligations without establishing that the alleged violation has caused an actual loss, such as a denial of benefits.

Similarly, the Ninth Circuit's decision in *Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455 (9th Cir. 1996) supports the conclusion that an ERISA Plan participant or beneficiary may bring a claim for arbitrary and capricious denial of benefits based on an injury other than the actual denial if the process by which a coverage determination was made was defective. In *Saffle*, a plan participant brought a claim against the plan administrator for benefits she alleged were wrongfully denied. 85 F.3d at 456. The district court found that the Plan administrator had abused its discretion by applying an incorrect standard that conflicted with the Plan terms in making the benefits determination and went on to conclude that the plaintiff was entitled to benefits under the correct standard. *Id*. The Ninth Circuit agreed that the administrator had misconstrued the plan terms but found that district court had erred in addressing whether the plaintiff was actually entitled to benefits under the correct standard. *Id*. The court reasons that because the plan administrator had discretionary authority to interpret and apply the plan, the district court should have given the administrator "the opportunity of applying the plan, properly construed" to the plaintiff's claim for benefits" in the first instance. *Id*. The implication of the Ninth Circuit's holding in *Saffle* is that while the plaintiff's action was based on a denial of benefits, the relevant injury for the purposes of the district court action was the defective *process* that was applied to the determination of the plaintiff's coverage. Indeed, under *Saffle*, if a court finds that a plan administrator applied an incorrect standard in making a coverage determination, it is improper for the district court to adjudicate whether the claimant would have been entitled to benefits under the correct standard if the administrator has not first been given an

opportunity to address that question.

UBH attempts to distinguish *Saffle* on the basis that that case was not a class action and there was "actual evidence" that the flawed interpretation of the plan "impacted the plan's decision to deny the plaintiff benefits." The Court finds this distinction to be unpersuasive. Plaintiffs have offered evidence that the Guidelines they challenged were expressly referenced in the denial letters sent to each class member. The Court finds that this is sufficient evidence from which to conclude that the flaws alleged in this case, if proven, may warrant the injunctive relief Plaintiffs seek. To require Plaintiffs to prove conclusively that their benefits were denied because of the alleged flaws in the Guidelines rather than as a result of other individualized factors relating, for example, to their medical circumstances, would risk involving the Court in just the sort of inquiry that the Ninth Circuit cautioned in *Saffle* should be left to the administrator, at least in the first instance.

*Shaver* and *Saffle* do not, of course, stand for the proposition that ERISA claims *never* require a showing of actual loss. Where a plan participant brings an ERISA claim seeking an award of wrongfully denied benefits – what Plaintiffs in this action refer to as "make-whole" relief – courts require the plaintiff to establish that the ERISA violation actually caused the denial of benefits. *See, e.g., Hein*, 88 F.3d 210, 213 (3d Cir. 1996) (holding that plaintiff who sought an award of compensatory damages in the form of unreduced retirement benefits to which he claimed he was entitled could not prevail on breach of fiduciary duty claim under ERISA because he was not actually entitled to benefits under plain terms of the plain and therefore "there [was] no causal link between the alleged breach of fiduciary duty . . . and the denial of benefits to Hein."); *Payne v. POMCO Group*, No. 10 CIV 7285 BSJ, 2011 WL 4576545, at *2 (S.D.N.Y. Sept. 30, 2011) (holding that where plaintiff asserted a claim under 29 U.S.C. § 1132(a)(1)(B) seeking to recover benefits he claimed were wrongfully denied, the plaintiff failed to state a claim where it was "readily apparent from Plaintiff's Fund records that Plaintiff could not have qualified for disability benefits.").

In this case, however, Plaintiffs do not seek "make-whole" relief in the form of an award of denied benefits. Rather, they seek to secure rights and obligations owed to them under ERISA,

namely, their rights to a plan administrator that acts solely in the interests of plan participants in developing the Guidelines that are used to adjudicate their claims and to have their claims adjudicated under Guidelines that are consistent with the terms of their plans. In other words, the primary harm for which Plaintiffs' seek redress is not the denial of benefits itself but rather the loss of these rights. Given the case law discussed above, the Court concludes that ERISA permits Plaintiffs to assert such challenges. Consequently, UBH's argument that Plaintiffs must demonstrate that flaws in their Guidelines actually caused the Plaintiffs' denial of benefits misses the mark.

### ii. Standing

Closely related to the question of what types of injuries are actionable under ERISA is the question of Article III standing. "To bring an ERISA lawsuit, a plaintiff must not only have standing under the statute, but must also meet the standing requirements of Article III of the U.S. Constitution." *Wells v. California Physicians' Serv.*, No. C05-01229 CRB, 2007 WL 926490, at *3 (N.D. Cal. Mar. 26, 2007) (citing *Horvath v. Keystone Health Plan E., Inc*., 333 F.3d 450, 455 (3d Cir. 2003) (citing *Warth v. Seldin*, 422 U.S. 490, 491, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)); *Cent. States SE & SW Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C*., 433 F.3d 181, 199 (2d Cir.2005); *Bank America Pension Plan v. McMath*, No. C 97-3242 CRB, 2001 WL 263290, at *9 (N.D. Cal. March 5, 2001)). "[T]he irreducible constitutional minimum of [Article III] standing" contains three elements, namely, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 1548 (quoting *Lujan*, 504 U.S. at 560). In *Spokeo*, the Court emphasized that concreteness and particularization are separate requirements. "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id*. at 1548 (quoting *Lujan*, 504 U.S. at 560 n. 1). Even where this requirement is met, however, the injury-in-

fact requirement will not be satisfied unless the injury is also concrete.  *Id*.  "A 'concrete' injury must be '*de facto*'; that is, it must actually exist."  *Id*. (citing Black's Law Dictionary 479 (9th ed. 2009)).   An injury may be "concrete" even if it is intangible, the *Spokeo* Court explained, and "in determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles."  *Id*. at 1549.   With respect to history, the Court said, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."  *Id*. (citing *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 775-777 (2000)).  The judgment of Congress is also "instructive and important" because "Congress is well positioned to identify intangible harms that meet minimum Article III requirements."  *Id*.  Thus, "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before."  *Id*. (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring)).

Nonetheless, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *Id*. at 1549.   Thus, while a procedural violation "can be sufficient in some circumstances to constitute injury in fact," for example, where there is a "risk of real harm," a "*bare* procedural violation, divorced from any concrete harm" does not "satisfy the injury-in-fact requirement of Article III." *Id*.  (emphasis added).

The harm Plaintiffs rely upon in support of standing on their claims is the denial of their rights to Guidelines that were developed for their benefit and to a fair adjudication of their claims. While intangible, the Supreme Court has suggested that such harms may be cognizable under ERISA.  *See CIGNA Corp. v. Amara*, 563 U.S. 421, 423 (2011) (explaining that while "a fiduciary can be surcharged under § 502(a)(3) only upon a showing of actual harm, . . . such harm  . . . might come from the loss of a right protected by ERISA or its trust-law antecedents.").  Certainly, these violations do not appear to be the sort of "bare procedural violation[s] divorced from any concrete harm" that are insufficient to establish Article III standing under *Spokeo*.  Rather, the

24

Guidelines that are at the heart of Plaintiffs' claims were used to deny Plaintiffs' claims for coverage, allegedly due to flaws that resulted from UBH's failure to adhere to its duties to plan members as a fiduciary. This undisputed fact points to the conclusion that the rights allegedly denied implicate a "risk of real harm."

Further, with respect to Plaintiffs' request for injunctive relief, there is a significant body of case law that supports the conclusion that Plaintiffs need not demonstrate an actual loss to have standing to seek injunctive relief under 29 U.S.C. § 1132(a)(3). *See Horvath v. Keystone Health Plan E., Inc*., 333 F.3d 450, 455 (3d Cir. 2003); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C*., 433 F.3d 181, 199 (2d Cir. 2005); *Slack v. Int'l Union of Operating Engineers*, No. C-13-5001 EMC, 2014 WL 4090383, at *12 (N.D. Cal. Aug. 19, 2014) (finding that ERISA confers statutory standing to seek injunctive relief under 29 U.S.C. § 1132(a)(3) and that a plaintiff need not experience an actual loss to have standing under Article III to assert such a claim); *Wells v. California Physician' Serv*., No. C05-01229 CRB, 2007 WL 926490, at *3 (N.D. Cal. Mar. 26, 2007) ("courts hold that when plan participants seek injunctive relief for violations of ERISA's disclosure or fiduciary requirements, they can demonstrate Article III standing by showing a violation of ERISA and need not prove actual injury").

Therefore, the Court concludes that Plaintiffs have Article III standing as to both of the claims they assert in this action.

### D.    Surcharge Remedy

Because Plaintiffs seek a surcharge as a restitutionary remedy based on disgorgement, the Court looks to the principles of restitution in evaluating whether UBH is entitled to summary judgment as to Plaintiffs' surcharge remedy.  The Court concludes that it is.

"The object of the disgorgement remedy - to eliminate the possibility of profit from conscious wrongdoing - is one of the cornerstones of the law of restitution and unjust enrichment." Restatement (Third) of Restitution and Unjust Enrichment § 51, Comment e (2011).   Because this equitable remedy is aimed at preventing unjust enrichment on the part of the wrongdoer rather than compensating the plaintiff for an actual loss, the claimant's recovery "may potentially exceed any loss to the claimant." *Id*., Comment a. The difficulty courts often face, however, is

determining "the net increase in the assets of the wrongdoer . . . that . . . is attributable to the underlying wrong." *Id.*

In this case the Court, based on Plaintiffs' stipulation, limited Plaintiffs' surcharge claim to "the amount UBH was paid to process the claims that were denied." Class Certification Order at 43. In opposing UBH's summary judgment motion, however, Plaintiffs did not point to any evidence that would allow the Court to reasonably determine the amount of UBH's profits that is attributable to the alleged wrongdoing, namely, applying flawed Guidelines to Plaintiffs' claims. Instead, Plaintiffs assert that they can establish the amount of the surcharge by presenting evidence showing the amount UBH was paid to administer *all* of the class members' claims, including claims that may have been approved and claims that were denied but did not rely on the Guidelines as the basis for the denial. The measure proposed by Plaintiffs would capture profit that is not attributable to UBH's creation of the challenged Guidelines and application of those Guidelines to the class members' claims for coverage. Further, Plaintiffs conceded at oral argument that they have no expert testimony or other evidence that would allow the Court to make a reasonable determination of the amount of the payments received by UBH that were attributable to the alleged wrongful conduct by UBH.

The Court therefore concludes that UBH is entitled to summary judgment as to Plaintiffs' request for a surcharge, which is dismissed with prejudice.

## E.     Exclusion for Services Not Consistent with LOCs

### 1.     Background

UBH contends it is entitled to summary judgment in its favor with respect to all of the claims asserted by named Plaintiffs and class members whose plans specifically exclude coverage for services that are not consistent with UBH's LOCs. Motion at 16-17. According to UBH, the plans of all but three of the named Plaintiffs include such exclusions. *Id.* at 17. In particular, according to UBH "[i]t is undisputed that the health plans applicable to Plaintiffs Wit (both David and Natasha), Pfeifer, Holdnak, Muir, Tillitt, Alexander and Driscoll specifically exclude coverage for treatment that is [n]ot consistent with [UBH's] level of care guidelines or best practices as modified from time to time." *Id.* UBH contends these are separate and independent exclusions

26

that support UBH's denial of coverage regardless of whether their Guidelines adhere to generally accepted standards. *Id.*

Plaintiffs, on the other hand, argue that UBH's reliance on the "guidelines exception" is misplaced for several reasons. Opposition at 19. First, Plaintiffs point to the Court's conclusion in the Class Certification Order that "Plaintiffs had 'demonstrated, as a factual matter, that the insurance plans for the putative class members. . . require as a condition of coverage adherence to generally accepted standards and/or state law.'" *Id.* at 19-20 (quoting Class Certification Order at 33). Plaintiffs note that the Court expressly found that UBH had pointed to "nothing in any plan that would suggest that the 'guidelines exception' would permit insurance plans to adopt rules that are inconsistent with those standards." *Id.* at 20.

Second, if the Court were to reconsider this issue, Plaintiffs argue that there is "(at least) a genuine dispute as to the effect of the exclusion." *Id.* Plaintiffs contend UBH has simply focused on a single phrase from these Plaintiffs' plans, taken out of context. *Id.* When the exclusion is read in light of the plan language as a whole, Plaintiffs assert, it is apparent that the Guidelines are supposed to be consistent with generally accepted standards and therefore, that the guidelines exception does not constitute a separate and independent basis for denying a claim for benefits. *Id.*

With respect to the plans of named Plaintiffs Wit, Tillitt, Pfeifer, Alexander, and Driscoll, Plaintiffs point to the definition of "Covered Health Services" in their plans, which "all inform their members that UBH 'maintain[s] clinical protocols that describe the . . . prevailing medical standards and clinical guidelines supporting our determinations regarding specific services.'" *Id.* (citing Reynolds Decl., Ex. 18 at 16; Ex. 22 at 11; Ex. 23 at 12; Ex. 24 at 12; Ex. 25 at 16). These plans "define the phrase '[p]revailing medical standards and clinical guidelines' to mean: 'nationally recognized professional standards of care including, but not limited to, national consensus statements, nationally recognized clinical guidelines, and national specialty society guidelines.'" *Id.* (quoting Reynolds Decl., Ex. 18 at 16; Ex. 22 at 11; Ex. 23 at 12; Ex. 24 at 12; Ex. 25 at 16). As to these plans, Plaintiffs argue, "[r]eading the Guideline[s] Exclusion consistently with the definition of Covered Services, . . . the Court could reasonably conclude that

27

the exclusion did not authorize UBH to adopt any guidelines it wants" but instead "merely underscores that UBH will decide whether the services meet generally accepted standards by using its Guidelines, which describe those standards." *Id*. at 20-21.

The plan of Plaintiff Brian Muir also does not support UBH's position, Plaintiffs argue, because his plan does not contain the "Guideline[s] Exclusion," instead containing a "garbled paragraph" that excludes coverage for services that, in UBH's reasonable judgment, are:

> (4) Not consistent with [UBH's] level of care guidelines or best practices as duration of treatment, and considered ineffective for the patient's Mental Illness, substance use disorder or condition based on generally accepted standards of medical practice and benchmarks.

*Id*. at 21 (quoting Reynolds Decl., Ex. 21 at 12 (emphasis added)).   Plaintiffs contend this exclusion (if it "means anything"), "directly links UBH's level of care guidelines with generally accepted standards of care." *Id*.

As to the Holdnak plan, Plaintiffs argue that "the exclusion cannot reasonably be interpreted as authorizing UBH to adopt level of care guidelines that grossly restrict the coverage otherwise provided by the Plan" because such an interpretation "would mean that UBH could adopt any Guidelines it chose, subject to no limiting principle, even Guidelines that in effect negated all or substantially all behavioral health coverage." *Id*.  Plaintiffs contend UBH's own witnesses testified that UBH cannot use the Guidelines to "rewrite the Plan" in this manner. *Id*. (citing Reynolds Decl., Ex. 75 (Dehlin Dep.) at 128, 147, 149).

Finally, Plaintiffs argue that UBH's "self-interested interpretation of the Guideline[s] Exclusion runs afoul of ERISA, as well" because UBH is an ERISA fiduciary and therefore, was "required to discharge its duties – including when it developed guidelines to standardize its Plan interpretations – 'solely in the interest of the participants and beneficiaries.'" *Id*. at 22 (quoting 29 U.S.C. § 1104(a)(1)).  Moreover, Plaintiffs assert, under ERISA, "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." *Id*. (quoting 29 U.S.C. § 1110(a)).  And Plaintiffs argue further that to the extent the Guidelines Exclusion applies only to mental health and substance use disorders, these plan exclusions would

violate the Mental Health Parity Act under UBH's interpretation. *Id*. at 22-23 (citing 29 U.S.C. §1185a(a)(3)(A)(ii) (prohibiting "separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits"); *id*. § 1104(a)(1)(D) (ERISA fiduciary acts in accordance with plans only "insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter," which includes the Parity Act)).

### 2. Discussion

At the class certification stage of the case, UBH argued that the commonality requirement of Rule 23(a) was not satisfied based, in part on the "myriad exclusions and limitations that give UBH discretion to deny coverage in certain circumstances even if the treatment is consistent with generally accepted standards of care." *Wit*, Dkt. No. 148 (UBH Opposition to Class Certification Motion). As one example of this, it pointed to class member plans that "excluded coverage when treatment is 'not consistent with the Mental Health/Substance Use Disorder Designee's level of care guidelines or best practices as modified from time to time.'" *Id*. UBH argued that "[f]or these members, UBH's fiduciary duty to administer the plan in accordance with its terms is entirely consistent with UBH's application of its internal guidelines." *Id*. The Court expressly rejected that argument, however, stating in its Class Certification Order as follows:

> The Court . . . rejects UBH's reliance on the fact that some class members' health insurance plans excluded coverage for treatment that is "not consistent with the Mental Health/ Substance Use Disorder Designee's level of care guidelines or best practices as modified from time to time" (the "guidelines exception"). *See* Romano Decl., Ex. 71 (Health plan chart) at 6, 10, 20, 25). To the extent it is undisputed that all Named Plaintiffs' and Sample Plaintiffs' insurance plans incorporated generally accepted standards, UBH has pointed to nothing in any plan that would suggest that the "guidelines exception" would permit insurance plans to adopt rules that are inconsistent with those standards.

Class Certification Order at 33.

As the Court has already found that under the named Plaintiffs' plans the Guidelines exception does not allow UBH to adopt standards that are inconsistent with generally accepted standards, the Court declines to revisit that question here. Therefore, the Court denies UBH's request for summary judgment on this ground.

### F. Claims Asserted Under Texas Law

#### 1. Background

The *Wit* State Mandate Class covers denials governed by the laws of Texas, Illinois, Connecticut and Rhode Island and is represented by Plaintiff Brandt Pfeiffer. UBH argues that it is entitled to summary judgment with respect to any claims that rely on Texas state law because the undisputed evidence reflects that "it has been UBH's policy and practice to apply TDI guidelines - not UBH guidelines - to coverage decisions for plans subject to Texas law for the entire class period." Motion at 18 (citing Romano MSJ Decl., Ex. 17 (Brennecke Depo.) at 115-118; *id.*, Ex. 2 (Triana MSJ Decl.) at 2).

In addition, UBH asserts, only two of the 110 sample coverage determinations produced in this case were governed by Texas law and Plaintiffs have conceded that Texas law was applied in both cases. *Id.* (citing Motion for Class Certification Order, Dkt. No. 133 at 13 n. 12 (noting that the Claim Sample included some denials that "fell outside the Class definitions," including "two cases [in which] UBH used Texas Department of Insurance criteria to adjudicate the claims as required under Texas state law for fully-insured plans" and identifying sample claimants as RTC-21 and IOP-01); Reynolds Class Certification Decl., Dkt. No. 129-1, Ex. F (chart listing basic information about named Plaintiffs and Sample Plaintiffs in the putative classes) at 3 (listing for RTC-21, Sample ID No. 8873, noting that denial was based on Coverage Determination Guideline for Treatment of Substance Use Disorders AND Texas Department of Insurance Chemical Dependency Standard) and 9 (listing for IOP-01, noting that denial was based on Texas Department of Insurance Chemical Dependency Standard)).

Plaintiffs counter that the question of whether UBH had a policy of applying Texas regulations in adjudicating claims governed by Texas law at least raises questions of fact that cannot be decided on summary judgment. Opposition at 23. According to Plaintiffs, UBH fails to mention that the Sample Plaintiffs included at least one individual whose plan was governed by Texas law and whose denial was based on UBH Guidelines rather than Texas law. *Id.* (citing Reynolds Class Certification Decl., Dkt. No. 129-1, Ex. F, sample claimant RTC-29; Reynolds Opposition Decl., Ex. 57 (denial letter to RTC-29)). Moreover, Plaintiffs assert, the agreed-upon

list of *Wit* State Mandate Class Members reflects that UBH applied its own Guidelines to "deny coverage to hundreds of Members of Plans government by Texas Law." *Id.* (citing Reynolds Decl. ¶ 58 & Ex. 56 (chart listing agreed-upon members of *Wit* State Mandate Class) at 25; Ex. 73 (Bridge Dep.) at 82-85).

In its Reply brief, UBH argues that as a matter of law, it was not required to apply Texas law to RTC-29 because that claim was for services outside of Texas. Reply at 14 (citing Romano Reply Decl., Ex. 43 (RTC-29 Denial Letter)). UBH also rejects Plaintiffs' reliance on the information contained in the chart prepared by Plaintiffs' counsel listing the members of the *Wit* State Mandate Class. *Id.* at 15. In particular, UBH contends the information in this chart, which was produced to Plaintiffs by UBH, merely reflects information stored in UBH's computer system in various data fields and does *not* show that TDI guidelines were not applied to the claims of these class members. *Id.* (citing Reynolds Decl., Ex. 56). Further, UBH points to testimony of its witnesses that while the systems UBH uses contain a field for the guideline referenced in the denial letter, TDI guidelines must be entered manually and staff members typically enter a CDG or LOC instead, even if the denial was based on TDI Guidelines. *See id.* Romano MSJ Decl., Ex. 1 (Bridge 4/28/2016 Decl.) ¶ 17; Ex. 45 (Bridge 6/22/2016 Decl.) ¶ 7. According to UBH, the underlying clinical records show that it applies Texas law to claims for services in Texas and Plaintiffs have not demonstrated the existence of material dispute of fact on this question because they have offered no clinical records to counter UBH's assertion that its policy is to apply Texas law to services sought in Texas. *Id.*[7]

### 2. Discussion

The Court denies summary judgment as to claims of the *Wit* State Mandate Class governed by Texas law. UBH has offered the testimony of witnesses Triana and Brennecke that its policy

---

[7] In a stipulation filed after briefing on the instant motion was complete the parties agreed that "Texas law only applies to class members' requests for coverage to the extent a class member is a member of a fully-insured plan governed by Texas law, and where Texas law applies, it provides for the application of Texas Department of Insurance guidelines only where the request for coverage pertains to substance use disorder services sought or received in Texas." *See* Dkt. No. 279.

is to apply TDI Guidelines (rather than its own Guidelines) to claims governed by Texas law. On the other hand, the records from UBH's computer system reflect that UBH applied its own Guidelines to claims governed by Texas law. While one UBH witness states that staff "typically" entered CDGs and LOCs even when they in fact applied TDI Guidelines, that witness also states that staff can manually enter the state standards that they actually relied upon. *See* Romano MSJ Decl., Ex. 1 (Bridge Decl.) ¶ 17. Moreover, while UBH asserts that the underlying records show that TDI Guidelines were used even though their computer records state that they were not, UBH has not offered evidence based on these records conclusively establishing that all class member claims that were governed by Texas law were evaluated under that law. Therefore, the Court finds that there is a material dispute of fact as to what law was applied to claims that are governed by Texas law. Accordingly, the Court denies UBH's request for summary judgment as to the Texas claims.

## IV.     CONCLUSION

For the reasons stated above, the Motion is GRANTED with respect to Plaintiffs' claims to the extent that they seek a surcharge remedy. The Motion is DENIED in all other respects.

**IT IS SO ORDERED.**


Dated:   August 14, 2017


_____
JOSEPH C. SPERO
Chief Magistrate Judge